19909

The STATE, Respondent, v. Robert WILLIAMS, Appellant

(210 S. E. (2d) 298)

*Messrs. Ray P. McLain* and *Charles J. Baker, Jr.,* of Charleston, *for Appellant.*

*Messrs. Daniel R. McLeod, Atty. Gen., Robert M. Ariail, Asst. Atty. Gen.,* and *Joseph R. Barker, Staff Atty.,* of Columbia, and *Robert B. Wallace, Sol.,* of Charleston, *for Respondent.*

November 14, 1974.

LEWIS, Justice:

Appellant shot one Phoebe Maybank with a pistol on February 15, 1973. The bullet struck her in the neck and she was paralyzed from the wound so inflicted. She died about eight (8) months later, on October 8, 1973, from a blood clot which resulted, in the opinion of the medical expert, from the paralysis caused by the gunshot wound. Appellant was initially charged with assault and battery with intent to kill and, subsequently, with murder, after the victim died. Two indictments were obtained and consolidated for trial, one charging assault and battery with intent to kill and the other murder. The trial of appellant resulted in his conviction of voluntary manslaughter and a sentence of fifteen (15) years, from which this appeal is prosecuted.

The several questions presented will be disposed of in substantially the order of the occurrence of the incidents upon which they are based.

Appellant was arrested on February 15, 1973, shortly after the commission of the crime. A hearing was held be-

fore the magistrate on the following day, February 16th, to determine appellant's right to bail under the charge of assault and battery with intent to kill. As a result of this hearing, bond was set at $10,000.00. Appellant, an indigent, was not represented by counsel at the hearing. However, some time later, appellant's present counsel obtained the consent of the State to a reduction in the amount of bail and secured appellant's release from custody upon posting bond in the amount of $2500.00. After the victim died and a charge of murder was entered, appellant was continued on bail in the latter amount.

Appellant moved at the time of his arraignment that the indictment be dismissed because he was not afforded counsel at the initial bond hearing. The motion was denied and the contention that this was error presents the first question for decision.

Appellant contends that the hearing to determine his entitlement to bail was a "critical stage" in the prosecution and that the failure to provide counsel to represent him at the time deprived him of due process, equal protection of the laws, and reasonable bail.

No arbitrary, fixed stage of the prosecution has been set at which a defendant must be provided counsel in order to protect his constitutional rights. It is now settled however that an accused is entitled to the assistance of counsel at every *critical stage* of the proceedings and failure to have such assistance is reversible error even though no prejudice is shown. *Moorer v. State of South Carolina,* 244 S. C. 102, 135 S. E. (2d) 713.

Generally, a critical stage of a criminal proceeding has been reached when there is at least a reasonable possibility of prejudice to the defendant in the defense of his case. The test for determining whether a critical stage of the proceedings has been reached, as it relates to the right of counsel, is whether the particular stage either requires or offers opportunity to take a procedural step which

will have prejudicial effects in later proceedings, or whether events transpire that are likely to prejudice the ensuing trial. *Miller v. State of South Carolina,* 309 F. Supp. 1287 (4th-Cir.) ; *Sigler v. Bird,* 354 F. (2d) 694 (8th Cir.).

The bail hearing on February 16th was not a critical stage of the prosecution and the failure to provide counsel for appellant at such hearing does not constitute ground for reversal in the absence of a showing that prejudice resulted therefrom.

There is no showing in this record, nor does appellant contend, that anything occurred at the bail hearing which in any way affected or prejudiced his subsequent trial or that was likely to do so. He was not required to plead to the charges nor was any occurrence or statement at the hearing used in his subsequent trial.

The contention that the original requirement of $10,000.00 bail was excessive is without merit. The determination of the amount of bail was within the discretion of the granting officer and there is no showing of any abuse of such discretion. *State v. Taylor,* 255 S. C. 268, 178 S. E. (2d) 244.

The trial judge therefore properly refused to dismiss the charges because of the failure to provide counsel at the bail hearing.

Appellant also contends that the trial judge erred in refusing to dismiss the indictment upon the ground that it was obtained solely upon the basis of hearsay testimony, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 11 of the South Carolina Constitution. The record is devoid of any showing to substantiate the allegation that only hearsay testimony was presented to the grand jury and this exception is properly overruled on that ground.

Assuming however that the record sustained the charge that the indictment was founded upon hearsay evidence, there existed no basis in this record to dis-

miss the indictment upon that ground. In *Costello v. United States,* 350 U. S. 359, 76 S. Ct. 406, 100 L. Ed. 397 (cited with approval in *Pittsburgh Plate Glass Company v. United States,* 360 U. S. 395, 79 S. Ct. 1237, 3 L. Ed. (2d) 1323) the United States Supreme Court disposed of the Fifth Amendment claims in the following language:

"If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, . . ., if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

An indictment based upon hearsay testimony violates no right of the appellant under Article 1, Section 17 (now Section 11) of the South Carolina Constitution. In fact, our decisions preclude inquiry into the factual basis for an indictment by the grand jury. *Margolis v. Telech,* 239 S. C. 232, 122 S. E. (2d) 417.

Argument that appellant was deprived of Sixth and Fourteenth Amendment rights is also without merit. The long-established secrecy of grand jury actions and the nature of its operations and functions makes Sixth Amendment rights inapplicable to its proceedings.

As previously stated, the victim did not die until approximately eight (8) months after she was shot. Appellant was first indicted for assault and battery with intent to kill and, subsequently, for murder when the victim died. The two indictments were consolidated for trial over the objections of appellant. It is contended that this constituted prejudicial error.

The controlling legal principles are thus stated in the syllabus to *McCrary v. State of South Carolina*, 249 S. C. 14, 152 S. E. (2d) 235:

"Where the offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place and character, the trial judge has power, in his discretion, to order the indictments tried together over objection by the defendant in the absence of a showing that [defendant's] substantive rights would be prejudiced."

The offenses charged in the indictments were of the same nature and involved only one transaction, i. e., the shooting of the deceased. Other than his contention that death did not result from the gunshot wound, appellant's defense to both charges was the same. Neither was there any showing of prejudice from the trial of the charges together. Appellant's contention that the consolidation resulted in prejudice because the jury was lead to believe that he was guilty of multiple wrongdoing is not supported by the record. The testimony and instructions to the jury left no doubt that the charges arose out of one incident and that the question to be decided was which of the charges, if any, was sustained by the proof.

The question of consolidation of the charges for trial was addressed to the sound discretion of the trial judge and no abuse of such discretion has been shown.

Error is also charged in the alleged failure of the trial judge to require the State to respond to appellant's pretrial motion for discovery of (1) all evidence in the hands of the solicitor which was favorable to the appellant, (2) the transcript or minutes of the grand jury proceedings, and (3) certain specified information concerning the State's case against appellant.

There is no merit in the contention that the State failed to properly respond to the motion for discovery. In response

to this motion, the court directed: "That everything the Solicitor has that you be allowed to examine and look at and talk to his witnesses, if you want to." The record shows that the State made its entire file on the case available to counsel for appellant and that the court advised his counsel: "If there is anything else that you can think of that you want, I will get it for you if I can . . ." Appellant's brief concedes that "there were no grand jury minutes" and therefore, if it had been proper to do so, could not have been furnished. The conclusive answer to the present contention is that there is no factual basis to support it.

Appellant unsuccessfully moved, prior to trial, for an order "authorizing payment of a reasonable fee by the State of South Carolina to an independent forensic pathologist to be retained by defendant to evaluate medical and scientific evidence of the cause of death of the victim of the homicide." The motion was denied upon the ground that no funds were available to provide such services to appellant. It is contended that it was the duty of the State to provide appellant, an indigent, with the services of an independent medical expert —since there was a question as to the cause of death.

Dr. Sexton, a pathologist, testified that the victim died from a blood clot in the lungs, caused by a clot in the leg migrating to the lungs and cutting off the supply of blood to those organs. It was his further opinion that the paralysis from the gunshot wound and resulting immobilization of the victim reduced circulation in the leg to the point that the blood congealed or clotted. The subsequent movement of the clot to the lungs caused death. It was the doctor's opinion that the gunshot wound to the neck was the direct cause of death.

The expert's opinion as to the cause of death was based primarily upon his conclusion that the blood clot, found in the lungs, formed in the leg because of the immobilization of the victim from the paralysis caused by the gunshot wound. He also testified that "there are other things that

can cause clots in the legs, but she exhibited none of these other causes . . .;" and that it is rare for a blood clot to occur eight (8) months after an injury.

Appellant argues that, without the service of another pathologist, his counsel had no way to make an independent evaluation whether other imbalances and diseases might have contributed to the formation of the blood clot. It is contended that the assistance of a pathologist was necessary to afford adequate counsel.

It is conceded in respondent's brief that State funds are available, under Section 17-287, Supplement to 1962 Code of Laws, to provide the services of medical experts to indigent defendants. The fund made available under this statute is to be used "to reimburse private appointed counsel, public defenders, and assistant public defenders for necessary expenses actually incurred in the representation of persons . . ., *provided that the expenses are approved by the trial judge.*" (Emphasis added).

Since the Legislature has seen fit to make funds available for the purposes here sought, we need not pursue whether such funds are constitutionally mandated. There is no contention that the statutory conditions under which the funds are available violated any constitutional rights.

Under the foregoing statute, an indigent has no absolute right to have the State provide funds for expert witnesses to aid in his defense. An indigent is only entitled to such assistance when a showing is made that it is reasonably necessary for a proper defense. The determination of this question rests within the discretion of the trial judge and the exercise of that discretion will not be disturbed on appeal unless an abuse thereof has been shown.

While the ruling in this case was based upon the erroneous conclusion that funds were not available to meet the expenses of an additional pathologist, the failure to provide funds for such purpose resulted in no prejudice to appellant.

The pathologist, who testified for the State, was, admittedly, a qualified expert in forensic pathology. The testimony of the witness, along with all other evidence for the State, was made available to counsel for appellant prior to trial; and we must assume that counsel was familiar with the expert's findings as to the cause of death. The expert stated that it was his opinion, to the highest possible degree of medical certainty, that the gunshot wound inflicted by appellant caused the victim's death. While the expert recognized that blood clots can be caused by conditions other than the paralysis described in this case, he testified that none of those other conditions were present in the body of the deceased.

The opinion of the State's pathologist was based upon a complete autopsy. In so far as this record shows, any other expert employed by appellant would have to rely upon the physical findings from the autopsy performed by the State's witness. Neither the competence of the expert to make these physical findings nor his credibility in reporting them is challenged. In substance, appellant contends that, if he had been provided with funds, he might have found another expert who would have disagreed with the opinion of the State's witness. The conclusions of appellant that he might have found a pathologist who would have disagreed with the medical examiner, are based upon conjecture. There was no showing that the assistance of an additional pathologist would have aided appellant in his defense, and the refusal to provide funds for such purpose did not result in prejudice to him.

Appellant also maintains that the trial judge erred in permitting the Solicitor to cross-examine appellant as to the availability of a witness to testify and in allowing comment thereabout in the Solicitor's argument to the jury. There was testimony by appellant and others that, shortly before the fatal shot, appellant had complained to the deceased about her conduct toward one Lavinia, a

neighbor. There was some inference that this was partly responsible for an argument between the deceased and appellant. The testimony in question was as follows:

"Q. Is Miss Lavinia here in Charleston?
"A. Yes, Sir.

"Q. She could come in here and testify if she wanted to?
"A. Yes, I guess.

. . . . . .

"Q. Yes, and you could subpoena her?
"A. Probably could."

We are convinced that the ruling on the admissibility of the foregoing testimony constituted a sound exercise of the court's discretion in determining the range of cross-examination of the witnesses and that no reversible error is shown.

While appellant contends that the Solicitor commented in his argument about the failure of Lavinia to testify, there is nothing in the record to support the statement that such argument was made. Since the charge is unsupported in the record, it will not be considered on appeal.

The next question concerns the ruling of the trial court permitting the State to impeach the testimony of one of the defense witnesses.

Appellant testified that shortly before the difficulty he went to his room to get some money that he had left there in two wallets. He did not find the wallets, but did find a pistol which had been left in the same place. He placed the pistol in his pocket and returned to a room in the house where the deceased and his brother were. The mother of appellant was also in the house. When appellant confronted them, all, including appellant's mother, denied having the wallets. An argument allegedly ensued between appellant and the deceased. Appellant testified that the deceased threatened him with a large knife, and he shot her. The mother of appellant testified and corroborated appellant's plea of self-defense.

On cross-examination of appellant's mother the Solicitor questioned her concerning a conversation she had with neighbors shortly after appellant shot the deceased. In this conversation, the mother had, allegedly, told the neighbors that she had the wallets all of the time. The mother denied this conversation. Later, over objection, the Solicitor was permitted to impeach the mother's testimony by calling a neighbor to testify that the mother had made the statement concerning her possession of the wallets. It is contended that the trial judge committed prejudicial error in allowing this impeachment testimony because it was on a collateral matter.

Appellant relies upon the principle stated in *State v. Brock*, 130 S. C. 252, 126 S. E. 28, that "the cross-examining party is concluded by the answer which a witness gives to a question concerning a collateral matter, and no contradiction will be allowed even for the purpose of impeaching a witness."

The difficulty in applying this rule lies in determining what are collateral matters. Because of such difficulty, Brock recognized that considerable latitude and discretion should be allowed the trial judge in determining the admissibility of impeaching testimony.

It is generally recognized that the sole object of the rule against impeachment on collateral matters is to prevent confusion of issues and unfair surprise.

According to appellant, the altercation between him and the deceased resulted because of the accusation that the deceased had the missing wallets. Appellant said that his mother told him that she did not have them. If she did in fact have the wallets, as the contradicting witness testified the mother later told her, then it is inferable that the altercation arose because the mother did not truthfully disclose that she had them. There was also testimony that appellant and the deceased had a prior confrontation relative to some conduct of the deceased toward one Lavinia, a neighbor. Appellant testified that he procured the pistol only be-

cause he went to get his wallets, and the pistol was lying nearby. Whether he procured the pistol for that reason or because of his prior difficulty with the deceased vitally affected his plea of self-defense. The circumstances surrounding the procurement of the pistol by appellant was a relevant inquiry. The mother corroborated the plea of self-defense and her statements concerning the whereabouts of the missing wallets were a part of the circumstances immediately surrounding the fatal occurrence. The circumstances indicate significant probabilities that misrepresentation in the mother's statements concerning the wallets may have operated on her other testimony and materially affected its trustworthiness.

Under the foregoing facts and circumstances, we cannot hold that the trial judge abused his discretion in permitting the impeachment of the witness as to her alleged self-contradicting statement.

This brings us to the final question. It involves a determination whether the trial judge erred in refusing to direct a verdict for appellant on the ground that there was no evidence of a causal connection between the gunshot wound and the death of the victim. Appellant contends that the opinion of the pathologist that death *most probably* resulted from the gunshot wound was insufficient to support the finding that such causal connection existed beyond a reasonable doubt.

Other than the facts surrounding the shooting of the victim and her immediate paralysis which continued until her death about eight (8) months later, the only testimony as to the cause of death was that of the medical expert, a qualified pathologist. He gave as his opinion, based partly upon an autopsy, that the gunshot wound *most probably* caused death, and stated that his opinion was based upon the highest degree of medical certainty.

The trial judge properly submitted the issue of the cause of death to the jury for determination. The opinion of the

medical expert that the gunshot wound most probably caused death was sufficient to sustain a finding of such relation and the weight to be accorded it was for the jury to determine. *State v. Johnson,* 66 S. C. 23, 44 S. E. 58; *State v. Clark,* 15 S. C. 403; *State v. Chiles,* 44 S. C. 338, 22 S. E. 339; *State v. Foote,* 58 S. C. 218, 36 S. E. 551.

Judgment affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.