Robert WILLIAMS, Appellant,

v.

J. R. MARTIN, Warden, and the Attorney General of the State of South Carolina, Appellees.

Nos. 77–1058, 78–6569.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 22, 1979.

Decided March 6, 1980.

Timothy W. Bouch, Third Year Law Student (Walter Reiser, Randall M. Chastain, University of South Carolina Law Center, Columbia, S. C., on brief), for appellant.

Katherine W. Hill, Asst. Atty. Gen., Columbia, S. C. (Daniel R. McLeod, Atty. Gen.,

and Emmet H. Clair, Asst. Atty. Gen., Columbia, S. C., on brief), for appellees.

Before BUTZNER, HALL and PHILLIPS, Circuit Judges.

BUTZNER, Circuit Judge:

The critical issue in this appeal is whether a state court's refusal to furnish an indigent prisoner an expert for the preparation and presentation of his defense was constitutional error. The district court held that it was not and dismissed Robert Williams' petition for a writ of habeas corpus. We reverse because we believe that the appointment of an expert was constitutionally required for Williams' adequate defense against a charge of murder.

I

Williams shot Phoebe Maybank during a family quarrel over a missing wallet. The wound paralyzed Maybank, and eight months later she died. Williams was initially charged with assault and battery with intent to kill and later with murder. The indictments were consolidated for trial in the General Sessions Court, Charleston County, South Carolina.

Williams was indigent. Before trial his court-appointed attorney moved for the appointment, at the state's expense, of an independent forensic pathologist to evaluate medical evidence concerning the cause of Maybank's death. The motion disclosed that the county medical examiner believed Maybank died from a pulmonary embolism resulting from a thrombosis that formed in her leg due to immobilization caused by her paralysis from the gunshot wound. The motion explained that while Williams' attorney had learned from medical books that there are numerous causes of a pulmonary embolism, he was not professionally able to evaluate the evidence and question the medical examiner without consulting a pathologist. He therefore sought authorization to engage a pathologist to examine the autopsy report and perhaps to testify about the "probability that events unrelated to assault and battery" caused Maybank's

death. The motion concluded with an estimate that a minimum fee for consultation with a pathologist and for his appearance as a witness would be $400.

At the pretrial hearing on the motion, Williams' attorney elaborated on the necessity of consultation with a pathologist because of the eight-month interval between the infliction of the wound and death. He said:

There is a rather complex issue of medical causation involved. As best I understand it from my research, there is—the cause of death was a blood clot which formed in the leg of the decedent and then was detached and lodged in the pulmonary artery, I believe. I don't know exactly the detail, but the difficulty is that the blood clot in the leg can be caused by a variety of means. The medical examiner informed me that he did not observe any of these other things in his examination of the body and the specimens that he preserved, but it is impossible for counsel to examine those specimens and determine whether or not his assessment is correct and it's important, therefore, that the defendant be appraised and afforded the assistance of the competent expert witnesses to assist counsel in determining whether or not the cause of death as stated by the medical examiner is in fact the true cause of death . . . ..

After counsel presented the motion, the following colloquy occurred:

Judge: I have read your motion. As I understand it, your request, what you are in need of are funds to obtain this information, whether it is good or bad, and you ask the Court to direct that funds be paid? Is that correct?

Defense Attorney: Be made available, yes, sir.

Judge: Well, I don't have that authority.

Defense Attorney: Well, Your Honor, if it pleases the Court, I think the situation is in all respects similar to the situation of a defendant who needs to have a transcript provided for appeal or for other purposes.

Judge: Well, that is provided for by law.

Defense Attorney: The constitutional principle is the same, I believe, Your Honor, and I submit the motion to the Court.

Judge: Well, I can say to you that I can't issue an order directing the Treasurer of Charleston County to pay out this sum of money because, in my opinion, if I issued the order it would be ignored and I know of no funds available to pay for this type of evidence or testimony. So, I am not going to hold out to you that I can do that because I am satisfied that I can't. All I can tell you is what my understanding of the law is, and that 'is I don't have the authority to direct any money be paid to obtain this type of evidence or testimony from this type of witness. And, lacking that authority, I certainly can't mislead you or your client by stating that I can provide those funds. Now, if you can talk to someone in authority who has funds available and they are agreeable, based on an order of the Court, to pay the money, I will so order it.

Defense Attorney: I'll investigate that, Your Honor.

Williams' attorney did not renew his motion or advise the court about any further investigations concerning a source of funds to pay the pathologist.

At trial the state presented evidence that Williams shot Maybank, that she was unarmed, and that she presented no danger to him. The forensic pathologist testifying on behalf of the state said that Maybank's body was embalmed and buried. Nine days after death the body was exhumed, and he conducted an autopsy. He testified that in his opinion Maybank's death was due to a clot or thrombosis in her leg migrating to her lungs and cutting off the supply of blood to the lungs; her paralysis from the gunshot wound caused the clot; and her body exhibited no other cause for the clot in her leg. The autopsy report stated, "this thrombosis was most probably secondary to her paraplegia which resulted from a gunshot wound of the neck." The doctor explained that the phrase "most probably" indicated the highest degree of medical certainty, although he could not be 100% sure about anything in medicine.

Williams contended that Maybank's death did not result from the gunshot wound. He also asserted that he shot in self-defense when Maybank attacked him with a knife. The jury convicted him of voluntary manslaughter, and the court sentenced him to 15 years in prison.

Williams' appeal to the Supreme Court of South Carolina assigned error to the trial court's denial of his motion for funds to retain a pathologist. The Court held that a statute[1] authorizing payment of expenses of counsel appointed to represent indigents encompassed compensation for expert witnesses when the assistance of an expert is reasonably necessary for a proper defense. It noted that Williams' motion had been denied because of the trial court's erroneous conclusion that funds were not available, but it held that the failure to provide funds did not prejudice Williams. It based its ruling on testimony of the state's pathologist that the autopsy demonstrated to the highest possible degree of medical certainty that the gunshot wound caused death and that Williams had not shown that another pathologist would have aided his defense.

---

1. S.C.Code § 17–3–80 (Cumm.Supp.1978) provides:

*Appropriation for expenses of appointed private counsel and public defenders; restrictions and limitations.*

In addition to the appropriation in § 17–3–70, there is hereby appropriated for the fiscal year commencing July 1, 1969 the sum of fifty thousand dollars for the establishment of the defense fund which shall be administered by the Judicial Department. This fund shall be used to reimburse private appointed counsel, public defenders, and assistant public defenders for necessary expenses actually incurred in the representation of persons pursuant to this chapter, provided that the expenses are approved by the trial judge. No reimbursement shall be made for travel expenses except extraordinary travel expenses approved by the trial judge. The total State funds provided by this section shall not exceed fifty thousand dollars.

*See State v. Williams*, 263 S.C. 290, 300, 210 S.E.2d 298, 303 (1974).

Williams subsequently unsuccessfully sought a writ of habeas corpus in the state courts on the ground that he was denied effective representation because his counsel did not bring to the attention of the trial court the statute authorizing payment of expert witnesses.

Williams then twice applied for writs of habeas corpus in the federal district court. In the first he alleged that the denial of his motion for funds to retain a pathologist deprived him of due process of law and denied him equal protection of the law in violation of the fourteenth amendment. In his second petition he alleged that his counsel was ineffective because he did not obtain a pathologist to assist with his defense. With respect to the first petition, the district court held that Williams had not been prejudiced because he had shown only that "he *might* have found a pathologist who did not share the opinion of the pathologist who testified for the State as to the cause of death." It ruled that the constitution does not mandate "the expenditure of public funds for an indigent defendant to go shopping for a favorable expert witness." The district court denied the second writ, involving the competency of counsel, for essentially the same reasons: Williams had not shown that medical evidence in his behalf was available and "if so, the substance of such testimony." The appeals from denials of both writs were consolidated in this proceeding.

## II

There can be no doubt that an effective defense sometimes requires the assistance of an expert witness. This observation needs little elaboration. Had Williams been financially able to afford his own defense, competent counsel undoubtedly would have consulted a pathologist. Moreover, provision for experts reasonably necessary to assist indigents is now considered essential to the operation of a just judicial system. The American Bar Association standards on providing defense services state:

> The plan [for providing competent counsel to indigents] should provide for investigatory, expert and other services necessary to an adequate defense. These should include not only those services and facilities needed for an effective defense at trial but also those that are required for effective defense participation in every phase of the process . . . .

The accompanying commentary notes that "[t]he quality of representation at trial may be excellent and yet valueless to the defendant if his defense requires . . . the services of a[n] . . . expert and no such services are available." ABA Standards, Providing Defense Service, 22–23 (App. Draft 1968). Similarly, a distinguished committee of lawyers, state and federal judges, and academicians reported to the Attorney General that adequate representation of criminal defendants requires in some cases provision for engaging experts in addition to appointment of counsel. The committee stated:

> The need for such services has been recognized in all well-developed systems of representation for financially incapacitated defendants, both in this country and abroad. Until . . . such services are made available, the procedures in the federal courts can not fairly be characterized as a system of adequate representation. One of the assumptions of the adversary system is that counsel for the defense will have at his disposal the tools essential to the conduct of a proper defense . . . .[2]

Both Congress and the South Carolina legislature have responded to this need by authorizing the provision of funds to indigent defendants for expert services when necessary for an adequate defense. *See* 18 U.S.C. § 3006A(e); S.C.Code § 17–3–80 (Cumm.Supp.1978).

---

**2.** Report of the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice, 45–46 (1963).

■ *Jacobs v. United States*, 350 F.2d 571 (4th Cir. 1965), vacated a judgment denying a motion for collateral relief brought under 28 U.S.C. § 2255. Relying on *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), we recognized that the obligation of the government to provide an indigent defendant with the assistance of an expert was firmly based on the equal protection clause. In *Jacobs* we held that the obligation arises when a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance. 350 F.2d at 573. The determination of the defendant's need for expert assistance is committed to the sound discretion of the trial judge.

### III

■ The trial judge acknowledged Williams' need for assistance, but he denied the motion because he erroneously believed that he lacked authority to furnish an expert at the state's expense. It is quite evident that denial of Williams' motion was not the result of the informed discretion of the trial judge. We therefore must make an independent examination of the record to determine (a) whether a substantial question requiring expert testimony arose over the cause of death, and (b) whether Williams' defense could be fully developed without professional assistance. *See Jacobs*, 350 F.2d at 573.

The cause of Maybank's death was an essential element of the state's case. It could be established by the prosecution only through the testimony of an expert witness. Although the state's pathologist professed confidence in his opinion, despite embalming and the nine-day delay, he acknowledged that generally an autopsy should be performed as soon as possible after death. The pathologist also conceded that it is unusual for a pulmonary embolism to occur as long as eight months after trauma.

Thus, the record discloses a substantial question over the cause of death which required expert testimony for its explication.

This satisfies the first aspect of the *Jacobs* test.

*Jacobs* next requires consideration of whether Williams' defense could be fully developed without professional assistance. We must apply the *Jacobs* test in the light of the Supreme Court's observation that the assignment of a lawyer to an indigent must not be made "under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932). Without the services of an expert, Williams' trial counsel could not adequately prepare his case. A complete understanding of the medical factors involved was necessary before a medical layman could effectively question the state's pathologist and test the firmness of his opinion. The handicap under which Williams' counsel was forced to operate while preparing for and cross-examining the state's expert is markedly similar to the situation in *Jacobs* where we held that the defendant's "position could not be fully developed for lack of available professional assistance." 350 F.2d at 573.

■ The presentation of Williams' defense at trial was also hampered by the absence of a defense expert witness. An expert may have been able to question the accuracy of an autopsy performed after embalming and delay. Furthermore, the record discloses that Maybank had cirrhosis of the liver. A medical textbook cited by Williams' counsel in his brief indicates that cirrhosis and numerous other ailments may cause an embolism. Therefore, it is possible that a pathologist could have expressed an opinion on the likelihood that cirrhosis of the liver or some other disease caused the embolism. Such testimony could well have raised a reasonable doubt concerning the cause of death. Just as the state needed an expert to prove the cause of death, Williams needed an expert to present his defense. It is not incumbent upon Williams to prove under the *Jacobs* test that an independent expert would have provided helpful testimony at trial. An indigent prisoner who needs expert assistance because the subject

matter is beyond the comprehension of laymen should not be required to present proof of what an expert would say when he is denied access to an expert.

█ The state, relying on *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), argues that Williams waived any right to relief. *Estelle* found waiver of a constitutional right because the defendant never objected to the trial court about being tried in prison clothing. Here, in contrast, Williams' counsel did request funds and was affirmatively informed by the trial judge that no funds were available. Moreover, the state asserted in response to Williams' claim of ineffective counsel that "[c]ounsel cannot be personally faulted for being unaware of the South Carolina law providing for such assistance since the trial judge, who has had many years on the bench, was also unaware of the statute."[3] *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), on which the state also relies, dealt with an alternative source of assistance that was widely known and easily available. In Williams' case, however, the record discloses no alternative to the state funds requested and denied by the trial judge. Likewise, we conclude that *Satterfield v. Zahradnick,* 572 F.2d 443 (4th Cir. 1978), which the state cites, is not controlling because of factual differences. *Satterfield* concerned the defendant's claim of insanity. Satterfield was able to procure a doctor to testify in his defense, and the state did not introduce evidence available to it that he was sane.

█ Because a substantial question requiring expert testimony arose over the cause of Maybank's death and because Williams' defense could not be fully developed without professional assistance that would have been available to a person who could afford his own defense, Williams has satisfied the dual test prescribed in *Jacobs* to establish that he was denied equal protection of the law. Furthermore, the trial judge's refusal to provide an expert deprived Williams of the effective assistance of counsel and due process of law in violation of the sixth and fourteenth amendments. *Cf. Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Mason v. Arizona,* 504 F.2d 1345, 1351 (9th Cir. 1974); *Davis v. Coiner,* 356 F.Supp. 695 (N.D.W. Va.1973); *United States v. Germany,* 32 F.R.D. 421 (M.D.Ala.1963).

█ The order dismissing Williams' habeas corpus petition is vacated, and the case is remanded with directions to appoint a pathologist to investigate the cause of Maybank's death. If, with such assistance, Williams can establish that the expert assistance of a pathologist in preparing and presenting his defense was necessary to the adequate presentation of that defense, and might reasonably have affected adjudication of the cause of death, the writ should be granted, subject to retrial in a reasonable length of time. *See* ABA Standards, Providing Defense Services § 1.5 (App. Draft 1968). Obviously, if the pathologist testifies that there is no reasonable doubt that the gunshot wound caused Maybank's death, Williams will have failed to establish that an expert witness would have assisted in the adequate preparation and presentation of his defense. In that situation, the error caused by the state's failure to appoint an independent expert would be harmless and the conviction will stand. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Jacobs,* 350 F.2d at 573.

█ Because Williams failed to object at trial to the jury instruction on self-defense, we affirm the judgment of the district court on that issue. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Hankerson v. North Carolina,* 432 U.S. 233, 244 n.8, 97 S.Ct. 2339, 2345 n.8, 53 L.Ed.2d 306 (1977); *Frazier v. Weatherholtz,* 572 F.2d 994, 996 (4th Cir. 1978).

Vacated and Remanded for Further Proceedings.

---

**3.** In view of our disposition of the case, we need not address Williams' claim that his counsel was ineffective because he did not obtain a medical witness.

K. K. HALL, Circuit Judge, dissenting:

I can agree with the majority decision that upon the facts of this case Williams was denied due process of law and equal protection of the law in violation of the Sixth and Fourteenth Amendments to the Constitution; however, I cannot agree that the fault therefor was with the trial judge. The South Carolina statute, S.C.Code § 17–3–80 (Cum.Supp.1978), which lies at the heart of this case, limits to fifty thousand dollars the total amount of money which may be spent and gives the trial judge considerable discretion in reimbursement of funds to counsel representing indigent criminal defendants. In my view, it was incumbent upon counsel to make his case before the judge that funds were available, that expenses had been (or would be) incurred, and that the circumstances of his case brought it within the terms of the statute.

If co-counsel, who was responsible for expert testimony, had been diligent, he would have presented his case to the court in a proper manner. It is no excuse that he was engaged in another case during the three days between arraignment and trial. It is difficult to see how he could have been adequately prepared on any phase of the case under such circumstances. Yet the record fails to show a motion for continuance.

I would reverse for ineffective assistance of counsel. That is where the true fault lies.

The majority opinion more grievously errs in the relief portion of the opinion.

I would reverse and remand for a new trial. Counsel should have the opportunity to make and argue a motion for allowance of expenses for the employment of an independent forensic pathologist to evaluate the medical and scientific causes of the victim's death and to advise counsel during trial. The trial judge would then have an opportunity to make a determination as to whether such relief should be granted.

There is more involved in the proper defense of a case than its mere presentation at the trial itself. More often than not the preparation for trial is of greater importance. How is counsel to prepare a defense unless he can secure information upon which to base it? Here he needed to consult an expert to determine whether the state's pathologist was correct in his opinion as to the cause of death. The expert would undoubtedly have been helpful to counsel in understanding the medical testimony, in cross examining the state's expert and in presenting his argument to the court and jury.

The majority proposes to let this conviction stand unless ". . . the testimony of the pathologist would have been relevant to [the] defense." As I interpret this phrase, it makes the pathologist's *testimony* conclusive on the constitutional issue. This is inconsistent with the majority's position that the *assistance* of an expert was necessary for an adequate defense, regardless of whether the expert would have provided helpful testimony at trial. Maj. op. at 1026–1027. Defense counsel might well have been able to raise a reasonable doubt by astute cross-examination of the state's expert—but not without his own expert to advise him.

As a practical matter, I wonder if the appointed expert will have enough physical evidence to reach an independent conclusion on the cause of death, or if he will have to base his opinion solely on the state expert's autopsy report. If that is so, and if his opinion agrees with the state expert, the defendant will not get a new trial despite all the majority opinion says about the defendant's constitutional rights. The majority declares: "We reverse because we believe that the appointment of an expert was constitutionally required for Williams' adequate defense against a charge for murder." These are strong words. Appointment of an independent expert to give an opinion is weak action.

The majority likens this case to *Jacobs v. United States*, 350 F.2d 571 (4th Cir. 1965). I find no significant similarity. There the sole issue was the mental capacity of the defendant at the time of trial. Testimony by an expert on that point is subject to the

most limited cross examination. The facts in this case call for opinion as to cause of death, and all the defendant needs to do is to raise a reasonable doubt. Under no theory can this be compared to evaluating the results of an I.Q. test to determine whether defendant was mentally competent to stand trial in *Jacobs*.

I cannot see how the majority can say so much and do so little.