Paul Warner POWELL, Petitioner,

v.

Loretta K. KELLY, Warden, Sussex I State Prison, Respondent.

No. 1:07cv59.

United States District Court, E.D. Virginia, Alexandria Division.

June 25, 2007.

---

## CAPITAL POST CONVICTION PROCEEDING

### *MEMORANDUM OPINION*

ELLIS, District Judge.

At issue in this capital habeas proceeding is petitioner[1] Paul Powell's motion for appointment of a "mitigation specialist" prior to filing his § 2254 petition. Such an expert, petitioner contends, would assist habeas counsel in developing the forthcoming petition's claim that trial counsel was unconstitutionally ineffective at sentencing by failing to investigate and adduce mitigating evidence about petitioner's back-

---

1. To be precise, Powell is not yet a petitioner, as no § 2254 petition has yet been filed, and indeed, Powell has on two occasions expressed a desire not to file such a petition. Nonetheless, for ease of reference, and because habeas counsel have been appointed and a date set for the filing of a petition, Powell will be referred to as "petitioner."

ground. For the reasons that follow, the motion must be denied.

## I.

The procedural history of this case provides necessary context for resolution of the instant motion. In September 2000, petitioner was convicted in Prince William County Circuit Court of the capital murder of Stacey Reed during or subsequent to the rape of Kristie Reed, as well as the attempted capital murder, rape, and abduction of Kristie Reed. He was sentenced to death. This first death sentence was reversed on appeal by the Supreme Court of Virginia and remanded for retrial on a charge no greater than first degree murder. *Powell v. Commonwealth,* 261 Va. 512, 552 S.E.2d 344, 363–64 (2001). After this reversal, petitioner wrote a letter to the prosecutor from prison, mocking the government's reversal and setting forth in detail petitioner's version of the murder. Specifically, petitioner admitted in his letter that he raped Kristie after stabbing and killing Stacey, but also that he had attempted to rape Stacey before murdering her.

Based on this letter, the Commonwealth elected to *nolle prosequi* the remanded case, and to re-indict petitioner on a new capital murder theory, namely, petitioner's capital murder of Stacey during or subsequent to petitioner's attempted rape of Stacey. Tried on this new indictment, petitioner was convicted in January 2003, and again sentenced to death in May 2003. On direct appeal to the Supreme Court of Virginia, petitioner assigned numerous errors, including the prosecutor's failure to disqualify himself, failure to dismiss the new indictment on grounds of double jeopardy or law of the case doctrine, and assorted evidentiary errors. The conviction and sentence were affirmed. *Powell v.*

*Commonwealth,* 267 Va. 107, 590 S.E.2d 537 (2004).

Petitioner then filed for state habeas relief, alleging, *inter alia,* that trial counsel was unconstitutionally ineffective at the penalty phase of the second trial because counsel failed to investigate petitioner's background properly and failed to present an adequate mitigation case. These claims merit more detailed description because they are pertinent to the instant motion. Specifically, petitioner alleged in his state habeas petition that trial counsel (i) failed to investigate petitioner's background, (ii) failed to interview relevant witnesses, and (iii) failed to review the records of petitioner's prior counsel. He further contended that had trial counsel performed these tasks, trial counsel would have discovered mitigating evidence relevant to the penalty phase (i) to rebut the Commonwealth's claim that petitioner had racist beliefs and tortured animals, (ii) to rebut the claim that petitioner had no remorse for his crimes, and (iii) to rebut the claim that petitioner is a person of average intelligence or better. *See Powell v. Warden, Sussex I State Prison,* 2005 WL 2980756 at *18–20 (Va. Nov. 8, 2005). According to petitioner's state habeas petition, trial counsel's constitutionally defective presentation of a mitigation case stemmed from (i) failure to adduce documentary evidence at the penalty phase, (ii) failure to conduct adequate interviews of petitioner's family, (iii) failure to develop the testimony of the appointed psychiatrist, (iv) failure to present adequate evidence of petitioner's "toxic home life" growing up, (v) failure to investigate petitioner's psychological problems as a youth, (vi) failure to adduce evidence of the unwillingness of petitioner's family to cooperate with his psychological treatment as a youth, (vii) failure to present evidence of petitioner's destitute life as an adult immediately before the crimes, and (viii) failure to introduce certain school and

psychological records as evidence against future dangerousness. *See Powell v. Warden, Sussex I State Prison,* 2005 WL 2980756 at *18–20 (Va. Nov. 8, 2005).

The Supreme Court of Virginia rejected all of petitioner's state habeas claims, finding that each claim of trial counsel's inadequate investigation and inadequate performance at the penalty phase failed both the performance and prejudice prongs of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Powell,* 2005 WL 2980756 at *18–20. While it also rejected all of petitioner's other state habeas claims, the Supreme Court of Virginia subsequently granted rehearing on the question whether Powell's counsel was ineffective at sentencing for failing to object to a form that incorrectly noted petitioner had previously been convicted of capital murder. In the end, the Supreme Court of Virginia found the inaccurate form did not meet *Strickland's* prejudice prong, and thus affirmed its earlier ruling denying habeas relief. *Powell v. Warden, Sussex I State Prison,* 272 Va. 217, 634 S.E.2d 289 (2006) (rehearing). The Commonwealth then set an execution date.

On January 19, 2007, petitioner, by counsel, filed a motion in federal district court declaring his intention to file a habeas corpus petition pursuant to 28 U.S.C. § 2254, seeking a stay of execution pursuant to 28 U.S.C. § 2251(a)(3), and seeking appointment of habeas counsel pursuant to 18 U.S.C. § 3599(a)(2). The motion was granted; two counsel were appointed[2] & and a stay entered on January 25, 2007. *See Powell v. Kelly,* No. 1:07cv59 (E.D.Va. Jan. 25, 2007) (Order). The Order also set a schedule requiring, *inter alia,* the filing of the petition on March 9, 2007. Petition-

er, by counsel, objected, arguing that he was entitled, as a matter of law, to delay filing the petition until November 7, 2007, the end of the one year statute of limitations. More specifically, petitioner argued that setting a filing deadline for an indigent's § 2254 petition before the expiration of the AEDPA statute of limitations would, *inter alia,* violate the separation of powers and deny petitioner the equal protection of the laws. When this argument was rejected, petitioner sought mandamus in the Fourth Circuit Court of Appeals, which denied relief in an Order dated June 13, 2007. *See In Re Paul Warner Powell,* No. 07–1 (4th Cir. June 13, 2007) (Order). In the interim, by Order dated June 1, 2007, the stay of execution was lifted, as required by 28 U.S.C. § 2251(a)(3).

Petitioner now seeks appointment of a "mitigation specialist," and in support of this request, he has also submitted an *ex parte* list of potential witnesses a mitigation specialist would interview. Importantly, the mitigation specialist sought here is not to be confused with a psychiatrist or other mental health professional; rather, the mitigation specialist sought here is merely an investigator to aid counsel in interviewing witnesses and obtaining records pertinent to the sentencing phase of a capital trial.

## II.

 The appointment of experts in capital habeas cases is governed by 18 U.S.C. § 3599(f), which provides that "upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant," a district court may authorize the payment of such expenses.[3] Although § 3599(f)

---

**2.** One of the originally-appointed counsel withdrew and a successor was appointed.

*See Powell v. Kelly,* No. 1:07cv59 (E.D.Va. Mar. 7, 2007) (Order).

**3.** This provision also specifically forbids *ex*

speaks only of "defendants," subsection (a)(2) of the statute makes clear that § 2254 petitioners in capital cases are eligible for the receipt of funding for experts shown to be "reasonably necessary." And expert services are "reasonably necessary." when "a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance." *Wright v. Angelone*, 151 F.3d 151, 163 (4th Cir.1998) (quoting *Williams v. Martin*, 618 F.2d 1021, 1026 (4th Cir.1980)). Further, "expert services are not reasonably necessary if the record, viewed in light of the forecasted evidence, would not entitle the petitioner to an evidentiary hearing on his claims, or if the petitioner would not be able to win on the merits regardless of the expert's findings." *Bell v. True*, 366 F.Supp.2d 403, 405 (W.D.Va.2005) (citing, *inter alia, Lawson v. Dixon*, 3 F.3d 743, 753 (4th Cir.1993)).

A threshold question is whether prepetition appointment of experts is permissible under the current version of § 3599. The Supreme Court, construing an earlier version of the statute and pre-AEDPA, readily concluded that a capital defendant preparing to file a habeas petition may be granted funding for expert services before the petition is filed. *McFarland v. Scott*, 512 U.S. 849, 855, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). No Supreme Court or other published decision considers whether the same result should obtain under the current version of § 3599(f) and post-AEDPA.[4] Yet, because there appears to be no reason in principle that expert ser-

vices could not be provided pre-petition, nor any textual statutory impediment to doing so, the analysis here proceeds on the basis that the current version of § 3599(f) applies at the pre-petition stage.

The central question is whether in the circumstances at bar, petitioner has shown that expert services are reasonably necessary for the preparation or presentation of his petition. To answer this question, it is necessary to assess whether the purpose for which petitioner seeks the mitigation expert is consistent with the AEDPA scope of habeas review. If the purpose or product of the expert services falls outside the scope of that review, then it follows that expert services cannot be "reasonably necessary" under § 3599(f). This analysis then begins with a brief description of the scope of review under AEDPA.

■■■ Where, as here, a state court has already adjudicated the merits of a state prisoner's constitutional claim, no writ will issue unless the adjudication (i) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (ii) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court hearing." 28 U.S.C. § 2254(d)(2). With respect to the former, a state court decision is "contrary to" clearly established federal law when it applies a rule of decision that contradicts controlling Supreme Court precedent, or when it reaches an opposite result from a Supreme Court

---

*parte* communications or requests in connection with a motion for such funding, unless "a proper showing is made concerning the need for confidentiality." *Id.*

**4.** Petitioner's citation of *Bell v. True*, 366 F.Supp.2d 403 (W.D.Va.2005) on this point does not support the claim that § 3599(f) en-

compasses pre-petition expert services. There, *Bell* was denied a pre-petition mitigation expert, and was only granted one subsequently, post-petition and once the district court determined that a hearing was required on some claims. *See Bell v. True*, 413 F.Supp.2d 657 (W.D.Va.2006).

case that is materially indistinguishable. *Terry Williams v. Taylor,* 529 U.S. 362, 404–09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., for the Court). In contrast, an "unreasonable application" of clearly established federal law occurs where a state court correctly identifies the governing legal rule, but applies it in an objectively unreasonable manner. *Id.* at 409–10, 120 S.Ct. 1495. Moreover, a state court decision may sometimes be an unreasonable application of federal law when it applies Supreme Court precedent "in a different factual context from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not unreasonable[,] or fails to apply the principle of a precedent in a context where such failure is unreasonable." *Robinson v. Polk,* 438 F.3d 350, 355 (4th Cir.2006) (internal citations omitted); *see also Terry Williams,* 529 U.S. at 408–09, 120 S.Ct. 1495 (declining to reach the propriety of this rule). A federal habeas court may not issue the writ simply because it concludes "in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Terry Williams,* 529 U.S. at 411, 120 S.Ct. 1495. Moreover, to be "clearly established" federal law within the meaning of § 2254(d), federal law must be found in the holdings, not the dicta, of the pertinent Supreme Court cases. *Id.* at 412, 120 S.Ct. 1495. In assessing the reasonableness of the state court's application of federal law, a habeas court reviews the result the state court reached, not "whether its decision was well reasoned." *Bell v. Jarvis,* 236 F.3d 149, 159 (4th Cir.2000) (*en banc*).

■ Of course, a claim of constitutional error under § 2254(d) does not, by itself, warrant relief even if valid; it must also have had a "substantial and injurious effect or influence on the verdict" to justify habeas relief. *Wilson v. Ozmint,* 352 F.3d 847, 855 (4th Cir.2003) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). This is so regardless of whether the state court recognized the putative error, or assessed it for harmlessness beyond a reasonable doubt. *Fry v. Pliler,* —— U.S. ——, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007).

In addition to limiting the legal claims cognizable on habeas, AEDPA also restricts the factual information which may be considered by a federal habeas court. A state court's factual findings are presumed correct, a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Further, if a petitioner fails to develop the factual basis for a claim in state court proceedings, no evidentiary hearing may be held unless the claim (i) relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, or relies on a factual predicate that could not have been discovered through due diligence, and (ii) the new facts, if proven, would establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would find the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). *See generally Michael Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (construing § 2254(e)).

■ Given this elucidation of AEDPA, it is apparent that the purpose and product of the requested expert services fall outside the scope of review authorized by AEDPA. The work product of a newly-appointed mitigation expert will not affect the reasonableness of the state court's determination or application of law under § 2254(d)(1), nor the reasonableness of its resolution of a question of fact under § 2254(d)(2). Additionally, any attempted

use of such new mitigation evidence may well run afoul of the exhaustion doctrine. Each of these points merits elaboration.

First, determining whether the state habeas court resolved any factual issues unreasonably in connection with this claim, in violation of § 2254(d)(2), does not involve or require the services of a mitigation specialist or similar expert, as a federal habeas court's inquiry under § 2254(d)(2) is limited to the "the evidence presented in the state court proceeding." Nor is a mitigation expert needed to determine whether the state habeas court made a decision which was contrary to, or an unreasonable application of, clearly established federal law, in violation of § 2254(d)(1). This is because the § 2254(d)(1) analysis must focus solely on whether the state court's adjudication of the claim was an unreasonable application of *Strickland* and its progeny.[5] And as explained below, any newly-discovered mitigation evidence will not be relevant to the reasonableness of the Supreme Court of Virginia's analysis of performance or prejudice.

Petitioner's counsel seek appointment of a mitigation expert in the hope that the expert will uncover mitigation evidence that was not presented at petitioner's trial or state habeas petition. Newly-discovered mitigation evidence is irrelevant to the reasonableness of the Supreme Court's of Virginia's analysis of the *Strickland* performance prong, as that analysis properly considers the professional reasonableness of trial counsel's decision to investigate no further, in light of all the circumstances and the evidence known to counsel. *See, e.g., Wiggins v. Smith,* 539 U.S. 510, 521–22, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). In other words, counsel's performance is assessed by what information was known to him at the time he decided to investigate no further, not by what information would have been discovered had he done so.

Moreover, newly discovered mitigation evidence is irrelevant to the reasonableness of the Supreme Court of Virginia's prejudice determination. In this regard, petitioner essentially claims that in order to show that prejudice ensued from counsel's failure to investigate mitigation adequately, petitioner must know what mitigating evidence a professionally reasonable investigation would have revealed. While this argument appears initially plausible, it fails on closer examination, as it subtly elides the requirements of AEDPA by shifting the focus away from the reasonableness of the state habeas court's decision, and by instead inviting *de novo* review of the prejudice question. Petitioner adduced mitigating evidence at sentencing. He then adduced further mitigating evidence during state habeas proceedings, which he presented as evidence of prejudice from trial counsel's inadequate investigation. AEDPA forbids petitioner from using federal habeas review to obtain a second bite at the ineffectiveness apple by presenting mitigating evidence that was not presented to the state habeas court. In other words, a petitioner has an initial opportunity to discover and present mitigation evidence at trial, and then on state habeas review, he has another opportunity to present additional mitigation evidence in support of an ineffective assistance of counsel claim. But AEDPA does not allow a petitioner a third chance to discover new mitigation evidence on federal habeas review. So long as the Supreme Court of

---

**5.** *Strickland* analysis considers first whether counsel's performance was objectively unreasonable, and then whether there is a reasonable probability that but for counsel's unprofessional performance, petitioner would not have been sentenced to death. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052; *see also id.* at 694, 104 S.Ct. 2052.

Virginia reasonably determined the prejudice issue presented to it, no writ will issue.[6] Put another way, § 2254(d)(1) bars federal habeas relief in cases where the state habeas court reasonably applied *Strickland*[7] to the facts before it, *even if* a subsequent investigation reveals extensive mitigating evidence that might have undermined confidence in the outcome at sentencing had the evidence been timely presented to the state habeas court. The opposite conclusion would effectively return courts to the pre-AEDPA review scheme. Because newly discovered mitigation evidence is not relevant to a claim under either § 2254(d)(1) or (d)(2), it appears appointment of a mitigation expert is unwarranted.

 Additionally, permitting introduction of evidence of prejudice not presented to the state court, but later discovered by a federally-appointed mitigation specialist, may well run afoul of the exhaustion doctrine. *See* 28 U.S.C § 2254(b)(1)(A).[8] The exhaustion doctrine does not prevent a petitioner from pre-

senting evidence to the federal habeas court that was not presented to the state courts, provided that new evidence merely "supplements," and does not "fundamentally alter," the claim raised in the state petition. *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir.2005) (internal citations omitted); *see also Vasquez v. Hillery*, 474 U.S. 254, 260, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (supplemental evidence "did not fundamentally alter the legal claim already considered by the state courts," and therefore did not require dismissal for failure to exhaust). While the question whether additional evidence "supplements" or "fundamentally alters" a state petition can only be answered by reference to the facts and circumstances of each case, new evidence that places a claim in a "significantly different legal posture" must first be presented to and exhausted in the state courts. *Morris*, 413 F.3d at 491. There is no way to determine *ante* whether any evidence uncovered by a mitigation specialist on federal habeas would "supplement" or "fundamentally alter" the substance of the claims of prejudice raised in

---

**6.** In this regard, petitioner protests that he was not guilty of a lack of diligence in developing the failure to investigate mitigation claim in state habeas proceedings, as petitioner repeatedly requested investigative experts be appointed, which requests were denied. This argument also misconstrues AEDPA. The due diligence standard is pertinent only to resolving whether an evidentiary hearing is warranted under 28 U.S.C. § 2254(e)(2). It does not alter the substantive standard for habeas relief under 28 U.S.C. § 2254(d). Thus, even assuming petitioner was diligent in requesting a mitigation expert in state habeas proceedings, that does not alter the conclusion that the § 2254(d) inquiry focuses on the reasonableness of the state court's adjudication of the failure to investigate mitigation claim, which can only be based on the evidence of prejudice presented in state court. Neither raised nor addressed here is whether the state habeas court's denial of a mitigation expert on state law grounds might run afoul of some constitutional stricture.

**7.** The analysis here focuses on the "unreasonable application" prong of § 2254(d)(1). Clearly, no mitigation specialist is needed to determine if the state court's decision was "contrary to" federal law, *i.e.* whether it applied an incorrect rule of decision or distinguished an indistinguishable Supreme Court case, as this is a pure question of law.

**8.** Various exceptions to the exhaustion doctrine exist, including, *inter alia*, claims for which "there is an absence of available state corrective process," 28 U.S.C. § 2254(b)(1)(B)(i), and for which "circumstances exist that render such process ineffective" to protect the petitioner's rights, 28 U.S.C. § 2254(b)(1)(B)(ii). Moreover, the exhaustion requirement may be expressly waived by counsel for the Commonwealth. 28 U.S.C. § 2254(b)(3). There is no reason to believe any of these exceptions would apply here, nor is any other exception readily apparent.

state court. Yet importantly, the more successful such an investigation would be—that is, the more mitigating evidence uncovered, and thus the more potential evidence of *Strickland* prejudice available to the petitioner—the more likely the introduction of such evidence would significantly alter the substance of the claims presented to the Virginia courts, and thus run afoul of the exhaustion and/or procedural default doctrines. In other words, the more sharply new mitigation evidence diverges from the evidence of prejudice presented in the state habeas court, the less likely such evidence could be successfully employed in the federal habeas petition, as such evidence would run afoul of the exhaustion requirement. This conclusion also militates persuasively against appointing a pre-petition mitigation specialist here.

In conclusion, any evidence newly discovered by a federally-appointed mitigation specialist would likely be useless in this § 2254 petition, either because a claim derived from such evidence would be unexhausted, or because newly-discovered mitigation evidence would not affect the reasonableness of the state court's resolution of a failure to investigate mitigation claim or a factual issue related thereto, or both. Accordingly, it appears that no reasonable necessity exists for appointing a mitigation specialist, and petitioner's motion must be denied.

An appropriate Order has issued.