**Lester MATLOCK, Petitioner-Appellant,**

v.

**James ROSE, Warden,
Respondent-Appellee.**

**No. 81–5414.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 12, 1983.
Decided April 9, 1984.

William H. Farmer, Federal Public Defender, Nashville, Tenn., Donald E. Dawson, Asst. Federal Public Defender (argued), Nashville, Tenn., for petitioner-appellant.

William M. Leech, Jr., Atty. Gen., Ann Lacy Johns, Wayne Uhl (argued), Asst. Attys. Gen., Nashville, Tenn., for respondent-appellee.

Before KEITH and JONES, Circuit Judges, and JOINER, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Lester Matlock, petitioner in this *habeas corpus* proceeding under 28 U.S.C. § 2254(b), seeks reversal of an order denying habeas corpus relief. Matlock's pro se habeas petition claimed that the state trial court violated the Constitution by (1) not granting a request for a full physical and neurological examination when his only defense was that of insanity, (2) limiting the scope of his expert's testimony, and (3) failing to make the state carry the burden of proof on the issue of sanity. Because we believe that the district court properly denied the merits of petitioner's claims, we affirm.

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

## I

Lester Matlock was convicted of rape and assault with intent to commit first-degree murder in the Criminal Court of Knox County, Tennessee on May 6, 1977. He was sentenced to 150 years on the rape charge and 6–21 years on the assault charge. The sentences are to run concurrently.

Two aspects of Matlock's trial are relevant to this appeal. On December 6, 1976, the trial judge ordered the defendant to undergo a psychiatric examination to determine whether or not he was competent to stand trial. That examination was to take place at the Helen Ross McNabb Center, a state institution, at state expense. When that examination was completed and the report submitted, the defendant challenged the findings and requested another examination in a motion dated January 24, 1977. The motion alleged that the proper number of licensed physicians had not completed the examination. On February 18, 1977, the trial judge, who was evidently of the opinion that the defendant was competent to stand trial, ordered him examined by Dr. George Gee. Dr. Gee, a consulting psychiatrist to the Helen Ross McNabb Center, was to determine whether the defendant lacked the substantial capacity either to appreciate the wrongful nature of his acts or to conform his actions to the law.

After Dr. Gee concluded that Matlock could distinguish right from wrong, the defendant requested that he be given another, more complete, examination. Matlock contended that Dr. Gee had merely interviewed him for a short period of time and could not have made a thorough evaluation. Moreover, the motion stated that Dr. Bacon, a psychologist, had examined the defendant and determined that he could not adequately assist in trial preparation and that he was suffering from brain damage, mental retardation and a schizoid personality. At this time, the defendant again requested that he be given a full physical, mental and/or neurological examination at the Lake Shore Mental Health Institute or an equivalent institution. Since the defend-

ant was an indigent, he also requested that the state bear the costs of his examination. On March 30, 1977, the trial court denied the defendant's motion for an additional examination and set a trial date.

The defendant did not deny that he raped and attempted to kill his victim. Rather, he presented an insanity defense. At trial, he called Dr. Bacon to testify. The state objected to his testifying as an expert on matters relating to the diagnosis of mental illness. The state claimed that only a psychiatrist could properly testify to those matters. The court noted, however, that Dr. Bacon could, as a clinical psychologist, testify to matters related to the testing for mental deficiencies, the existence of brain damage and the defendant's intellectual abilities. Dr. Bacon did not seek, nor would the court permit him, to testify whether the defendant suffered from mental illness or whether he knew right from wrong. In the course of the court's questioning of Dr. Bacon, he admitted that the defendant did know right from wrong, but only at an eight-year-old level.

Matlock appealed his conviction to the Tennessee court of appeals, which affirmed by opinion on February 7, 1978. He alleged, inter alia, that (1) he was deprived of a fair trial because the failure to appoint a phychiatrist for a full examination precluded his only defense, and (2) the trial judge erred in limiting the testimony of Dr. Bacon. He did not raise the issue, raised in his federal habeas petition, that the state had failed to meet its burden of proof on the issue of sanity.

The court of appeals denied both claims and affirmed Matlock's convictions. The court concluded that there was no need for any additional findings on the issue of the necessity of further psychiatric examinations. It held that "there is not one scintilla of evidence that he was not legally sane and therefore responsible for his crimes ... it can be said that Matlock was not bright, but certainly he was not crazy." Noting that there was no reason to believe that any additional psychiatric examinations would change that result, the court held that the denial of additional examina-

tions was not improper. The court also held that there was no error in limiting Dr. Bacon's testimony, since he did not offer to testify as to Matlock's capacity to appreciate right from wrong. Thus, the limitation did not hinder the presentation of an insanity defense, nor was it an abuse of the discretion afforded trial judges.

The Tennessee supreme court denied certiorari on June 12, 1978, and Matlock filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254. He listed three alleged constitutional defects in petitioning for habeas relief. First, he listed the two issues raised in and denied by the state appellate court—the failure to give an additional examination and the limitation on Dr. Bacon's testimony. Second, he claimed that the state failed to introduce evidence sufficient to meet its burden of proof on the issue of sanity.

The district court, by opinion dated March 18, 1981, denied the writ. The court rejected the state's contention that the habeas petition should be dismissed because it contained an unexhausted claim. The court found that though the petitioner had not presented the sufficiency claim to the state courts, the state court's holding that there was not one scintilla of evidence to put the defendant's sanity in issue foreclosed any success for the defendant. Given that specific holding and clear state law, the district court found that it would be futile for the petitioner to return to state court on the sufficiency claim and proceeded to consider the merits of all the claims. On the merits, the district court denied relief.

The defendant appeals the denial of habeas relief to this Court. The petitioner, on appeal, does not contest the district court's ruling on the merits of his allegedly unexhausted sufficiency claims. Rather, he contends that the court erred in denying the merits of his examination and expert testimony contentions.

## II

### § 2254(b)

The state contends that we must dismiss the petition in this case because it includes a claim that has not been exhausted. The Supreme Court has held that a federal district court must not entertain a claim that has not been exhausted and that it must dismiss any petition that contains both exhausted and unexhausted claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *see also Bowen v. Tennessee,* 698 F.2d 241 (6th Cir.1983). The state contends that Matlock's petition must be remanded for dismissal because his first claim has not been exhausted. *Rose v. Lundy* did not make clear whether an appellate court must remand the petition for dismissal or whether it can remand leaving the district court to determine whether the petitioner should be granted leave to amend the petition to remove the unexhausted claim or claims. Several Circuits have seen wisdom in reading *Rose* as allowing the appellate court the power to remand for amendment, if appropriate. *Gulliver v. Dalsheim,* 687 F.2d 655 (2d Cir. 1982); *Stewart v. Parratt,* 682 F.2d 757 (8th Cir.1982); *Guthrie v. Warden,* 683 F.2d 820 (4th Cir.1982); *Niziolek v. Ashe,* 694 F.2d 282 (1st Cir.1982). This Circuit, however, has rejected that view, adopting instead the position that *Rose v. Lundy* requires that mixed petitions be remanded for dismissal. *Bowen v. Tennessee, supra.* The thrust of *Bowen* is that this Court is precluded from addressing habeas petitions, where the applicant has not "exhausted the remedies available" in the courts of the state on each of the claims.

28 U.S.C. § 2254(b) specifically provides, however, that this Court may address otherwise unexhausted claims for which there is no "available" state remedy:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, *or that there is either an absence of available State corrective process or the existence of circumstanc-*

*es rendering such process ineffective to protect the rights of the prisoner.* (Emphasis added).

This court has consistently held that the explicit language of § 2254(b) does not require the petitioner to pursue a state remedy that is clearly futile. *Wiley v. Sowders,* 647 F.2d 642 (6th Cir.), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1982); *Coley v. Alvis,* 381 F.2d 870 (6th Cir.1967). In *Wiley,* this Court found that the Kentucky state courts "effectively foreclosed" and "prejudiced" any of petitioner's available remedies. Relying upon the language of 28 U.S.C. § 2254(b), we concluded that the "exhaustion doctrine does not require pursuit of a state remedy where such pursuit is clearly futile." 647 F.2d at 647.[1]

Our construction of the precise language of § 2254(b) is supported by the policy underpinnings of the exhaustion requirement. In *Rose v. Lundy,* the Supreme Court stated that the exhaustion rule protects "the state court's role in the enforcement of federal law and prevent[s] disruption of state judicial proceedings." 455 U.S. at 518, 102 S.Ct. at 1203. In particular, the total exhaustion rule fosters three beneficial results. First, it "encourages state prisoners to seek full relief from the state courts." *Id.* Second, "federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record." *Id.* Finally, the rule promotes federal judicial economy. The federal burden will be lightened because the district court will be more likely to review all of the petitioner's claims in a single proceeding. *Id.*

When the state courts have foreclosed any available corrective process, none of these beneficial results are furthered by

requiring the petitioner to return to state court. The petitioner is encouraged to seek relief from the state courts so as to lessen federal intervention and preserve the proper balance between the state and federal systems. When it is clear that the state court will not "correct" the alleged wrong or "vindicate" the federal right, the return to state court does not further the state's interests. *Cage v. Auger,* 514 F.2d 1231, 1232–3 (8th Cir.1975). Furthermore, the factual record here is complete with respect to the issues upon which the petitioner seeks relief. A return to state court for summary rejection of his sufficiency claim can hardly be said to produce a record that will aid in our deliberations.

Finally, judicial economy is served by applying the futility doctrine in this case. If we consider the petitioner's claims, as did the district court, the matter will end here because we shall deny the merits of the claims. If, however, we return the case to the district court for dismissal, we will no doubt have to consider the claims once again at a future time. When we do so, it will be on a different record containing the same claims and the same materials. The petitioner will merely refile his petition, causing a duplication of our work. As the Fourth Circuit noted, "[t]he policies which prevailed in *Rose* do not call for such a burdensome exercise in paper shuffling." *Guthrie v. Warden,* 683 F.2d 820, 821 n. 1 (4th Cir.1982).

We find no conflict therefore between the futility doctrine and the concerns expressed in *Rose* and *Bowen.* In a Circuit which mandates dismissal of mixed petitions, *see Bowen, supra,* the concern for judicial economy, under the circumstances of this case, is particularly advanced

---

**1.** The futility doctrine has been widely recognized. *Carter v. Estelle,* 677 F.2d 427, 446 (5th Cir.1982); *Welsh v. Mizell,* 668 F.2d 328 (7th Cir.1982); *LaBruna v. U.S. Marshal,* 665 F.2d 439, 442 (2d Cir.1981); *Lindner v. Wyrick,* 644 F.2d 724 (8th Cir.1981); *Powell v. Wyrick,* 657 F.2d 222, 224 (8th Cir.1981); *Sweet v. Cupp,* 640 F.2d 233, 236 (9th Cir.1981); *Rodgers v. Wyrick,* 621 F.2d 921 (8th Cir.1980); *Montague v. Vinzant,* 643 F.2d 657, 659 (9th Cir.1981); *Colon v.*

*Fogg,* 603 F.2d 403, 405 (2d Cir.1979); *Robinson v. Berman,* 594 F.2d 1, 3 (1st Cir.1979); *Breazeale v. Bradley,* 582 F.2d 5 (5th Cir.1978); *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir.1978); *Hallowell v. Keve,* 555 F.2d 103, 108 n. 6 (3rd Cir.1977); *Franklin v. Conway,* 546 F.2d 579, 581 (4th Cir.1976); *Stubbs v. Smith,* 533 F.2d 64, 68–9 (2d Cir.1976); *Layton v. Carson,* 479 F.2d 1275 (5th Cir.1973); *Sarzen v. Gaughan,* 489 F.2d 1076, 1082 (1st Cir.1973).

through the futility doctrine. The district court in the case currently before us was well aware that petitioner Matlock had not exhausted the sufficiency issue [2] in the Tennessee state courts:

> As to the petitioner's first claim concerning the sufficiency of evidence on the issue of sanity, the court agrees with the state that there has been no exhaustion. This question has never been presented to the Tennessee appellate courts, and the state has thus never had the opportunity to correct any constitutional defects concerning the claim. Under most circumstances, such failure to exhaust would bar this court's consideration of the claim.

The district court explicitly found, however, that the State's "corrective process" in this particular circumstance would not only be "ineffective to protect the rights of the prisoner," but would be wholly "unavailable" to protect those rights. After careful review of the facts of this case, the district court declared:

> ... it is plain from the record before the court that any effort by the petitioner to present this claim to the state courts would now be *futile,* exhaustion will not be required....

The gist of petitioner's first claim is that the state failed to carry its burden of proving sanity on the date the offense was committed. Under Tennessee law, once the evidence establishes a prima facie case that the defendant was insane on the date of the offense, the burden is then on the prosecution to prove sanity beyond a reasonable doubt. *Collins v. State,* 506 S.W.2d 179, 184 (Tenn. [Cr.] App.1973). Until there has been a prima

facie showing of insanity, however, there is a presumption of sanity, and no proof need be introduced on the issue. In considering the appeal of petitioner's conviction, the Court of Criminal Appeals expressly found that no evidence had been offered that petitioner was not legally sane on the date of the offense. Tenn. Crim.App.Op. at 3. Putting aside, for the moment, the question whether this finding is supported by the record or not, it is clear in light of the statement that the appellate court would not now entertain arguments on the first claim of the instant habeas corpus petition. The Court of Criminal Appeals, having expressly found that there was no evidence of insanity, and therefore that the presumption of sanity remained intact, would not, *under any conceivable scenario,* reach the question of whether the state had met its burden of proving sanity. The prior holding of that court clearly precludes any consideration of the question presented by the first claim. (emphasis added).

We agree with the district court's reasoning.

■ Under Tennessee law, as the district court correctly concludes, the presumption of sanity places the initial burden of showing insanity upon the defendant. Thus, "while the prosecution is not bound to establish the defendant's sanity in the first instance, if the defendant's or the State's evidence raises a reasonable doubt as to the defendant's sanity, the defendant is relieved of further proof upon that issue and the burden of proof shifts to the State to establish the defendant's sanity beyond a reasonable doubt." *Pyburn v. State,* 539

---

**2.** In addition to the sufficiency issue, the state claims that the petitioner did not adequately raise the examination issue in the state courts. As far as we can tell from the brief, the complaint is that he did not raise the *constitutional* basis for his issue in the trial court. In short, we take the state's contention to be that the defendant did not comply with a state rule that such errors are not corrected on appeal when not raised at the trial level. Yet, when, as here, the state appellate court clearly hears and decides an issue, federal courts do not disrespect

to the state system by hearing the issue on habeas. *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Without doubt, the state appellate court heard the constitutional issue. It held that "Matlock had been ordered examined by a psychiatrist and the doctor found him competent to stand trial. He had no constitutional right to the services of a private psychiatrist at state expense." The state courts had a fair opportunity to hear the issue and correct any errors.

S.W.2d 835 (Tenn.Cr.App.1976); *Collins v. State,* 506 S.W.2d 179 (Tenn.Cr.App.1973). The state court of appeals has unequivocally held that *in this case* there is "not a scintilla of evidence" to put his sanity in doubt.

■ That Court has rejected the petitioner's sufficiency claim, leaving him no available state corrective process. This case does *not* involve a situation in which a previous state interpretation of its law presents a hardship for a subsequent petitioner who must contest that interpretation in order to prevail. Rather, the Tennessee Courts, in *this particular case,* have addressed and explicitly rejected petitioner Matlock's specific contentions. As the district court concluded, under "no conceivable scenario" will petitioner Matlock enjoy an "available state corrective process." We find therefore that Matlock's petition falls within the precise statutory language of 28 U.S.C. § 2254(b). We conclude that the particular "circumstances" of this case render any available Tennessee "corrective process ineffective to protect" petitioner's rights. Under 2254(b), therefore, we may reach the merits of petitioner's claims.

## III

Having engaged in this analysis of the procedural issues, we can now turn to the merits of petitioner's claims. The petitioner does not contest the district court's finding that there was no constitutional error with regard to the sufficiency of the evidence on the sanity issue. Instead, he claims that the lower court erred in not granting habeas relief because (1) the trial court improperly excluded some of Dr. Bacon's testimony, and (2) he was not afforded a full physical, mental and/or neurological examination at state expense.

### A. The Exclusion of Dr. Bacon's Testimony

■ Errors of application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus actions. *Bell v. Arn,* 536 F.2d 123 (6th Cir.1976); *Burks v. Egeler,* 512 F.2d 221 (6th Cir.1975). Yet,

when the error rises to the level of depriving the defendant of fundamental fairness, the claim is remediable on a petition for habeas corpus relief. *Maglaya v. Buchkoe,* 515 F.2d 265 (6th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975); *Handley v. Pitts,* 491 F.Supp. 597, *aff'd,* 623 F.2d 23 (6th Cir.1980); *Gemmel v. Buchkoe,* 358 F.2d 338 (6th Cir.1966).

■ Here, the district court ruled that there was no deprivation of fundamental fairness. The court noted:

Dr. Bacon never attempted to testify that the petitioner, in his opinion, was legally insane at the time of the crime. Indeed, he admitted that such a determination could not be made by a psychologist but, under the standards of the profession and state law, was left to the medical expertise of a psychiatrist. Tr. of Trial at 195–217. The excluded testimony concerned Dr. Bacon's opinion that the petitioner would be able to understand right from wrong on the intellectual level of an eight or nine year old, not that he was unable to make the distinction.

Petitioner contends that the exclusion of this testimony deprived him of his only defense, that of insanity. We can not agree. Under Tennessee law, the evidence excluded would not have supported an insanity defense. In fact, it appears that it would have undercut one. In *Graham v. State,* 547 S.W.2d 531 (Tenn.Sup.Ct.1977), the court adopted for Tennessee the language of the American Law Institute's Model Penal Code § 4.01 (1962) on the issues of "insanity" and "mental illness":

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

(2) As used in this Article, the terms "mental disease or defect" do not include any abnormality manifested only by repeated criminal or otherwise antisocial conduct.

The thrust of Dr. Bacon's testimony was that Matlock was retarded and had somewhat diminished intellectual capacities. He explictly stated that he would not testify that Matlock could not appreciate the wrongfulness of his conduct or that he could not control his actions. In fact, Bacon specifically stated that, at least on a nine-year-old level, he could appreciate right from wrong. However inartfully stated, the court of appeals of Tennessee was correct that the evidence indicated that "Matlock [may not be] bright, but certainly was not crazy."

The evidence excluded, therefore, would not have made out a case of insanity under *Graham.* At best, it would have shown that Matlock was retarded with some brain damage. There is simply no evidence that he could not appreciate the wrongfulness of his actions. Nor has the defense pointed to evidence that would have supported that finding had Dr. Bacon been allowed to testify. We, therefore, can not find that petitioner has been deprived of fundamental fairness by the limited scope of Dr. Bacon's testimony.

**B. The Failure to Grant an Additional Examination at State Expense**

The petitioner contends that the failure to provide him with a full psychiatric, neurological and physical examination deprived him both of a fair trial and of effective assistance of counsel. He contends that the examination given him by state psychiatrist Dr. Gee was not sufficient. The district court held, and the state now argues, that the examination by Dr. Gee was sufficient and that there is no evidence that failure to grant another examination impaired the defense or made the proceedings fundamentally unfair. We agree.

■ In order to render to indigents effective assistance of counsel, the state may be required to supply experts at its expense. *Williams v. Martin,* 618 F.2d 1021 (4th Cir.1980); *Hoback v. Alabama,* 607 F.2d 680 (5th Cir.1979); *United States Ex Rel. Edney v. Smith,* 425 F.Supp. 1038 (E.D.N.Y.), *aff'd,* 556 F.2d 556, *cert. denied,* 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1976); *Mason v. Arizona,* 504 F.2d 1345 (9th Cir.1974); *Hintz v. Beto,* 379 F.2d 937 (5th Cir.1967); *Greer v. Beto,* 379 F.2d 923 (5th Cir.1967); *Jacobs v. United States,* 350 F.2d 571 (4th Cir.1965); *McCollum v. Bush,* 344 F.2d 672 (5th Cir.1965).[3]

■ The case law is still developing on the scope of the constitutional duty to supply experts.[4] At a minimum, there must be

**3.** The need for psychiatric experts in a case in which insanity is the only defense is obvious. The Fourth Circuit aptly noted this in *United States v. Taylor,* 437 F.2d 371 (4th Cir.1971):

The assistance of a psychiatrist is crucial in a number of respects to an effective insanity defense. In the first place, the presence or absence of psychiatric testimony is critical to presentation of the defense at trial. "In practical terms, a successful defense without expert testimony will be made only in cases so extreme, or so compelling in sympathy for the defendant, that the prosecutor is unlikely to bring them at all." Goldstein, The Insanity Defense, 124–125 (1967).

Moreover the use of an expert for other, non-testimonial, functions can be equally important. Consultation with counsel attunes the lay attorney to unfamiliar but central medical concepts and enables him, as an initial matter, to assess the soundness and advisability of offering the defense. The aid of a psychiatrist informs and guides the presentation of the defense, and perhaps most importantly, it permits a lawyer inexpert in the science of psychiatry to probe intelligently the foundations of adverse testimony.

If an accused is to raise an effective insanity defense, it is clear that he will need the psychiatrist as a witness. He will need his aid in determining the kinds of testimony to be elicited, the specialists to be consulted, and the areas to be explored on cross-examination of opposing psychiatrists.

*Id.* at 126–127. ABA Minimum Standards for Criminal Justice. Providing Defense Services § 1.5 (Approved Draft, 1968); *See also* Attorney General's Committee, Poverty and the Administration of Criminal Justice (1965); Brennan, Law, Psychiatry and the Mentally Ill. 49 ABAJ 239 (1963).

Though these remarks were made in the context of applying the federal statute authorizing appointment of experts, 18 U.S.C. § 3006A(e), the need for experts to make assistance of counsel effective is no less in state cases.

**4.** We think it important to note our discomfort with the state's contention, in their brief, that

a fair factual basis for the defendant's contention that his sanity is in doubt, and that issue must be a substantial one in his defense. *Williams v. Martin, supra; Mason v. Arizona, supra; Hintz v. Beto, supra, Jacobs v. United States, supra; Pedo v. Wainwright, supra.* The Fourth Circuit requires some showing that the defense can not adequately be developed without the aid of an expert. *Williams v. Martin, supra.*

 We need not here fully decide the scope of the constitutional duty to provide psychiatric experts in preparation of an insanity defense.[5] Though the defendant's sole defense was that of insanity, there appears to be little, if any, evidence which suggests that there is a fair factual basis for the claim that his sanity is in doubt. Dr. Bacon's testimony suggests that the petitioner could not make out a case under the *Graham* insanity standard. In addition, this is not a case where *no* assistance was afforded. The state provided the services of Dr. Gee. He found that the defendant was sane. Absent evidence suggesting that Dr. Gee's examination ignored some essential factors or theory we can not hold that his aid was inadequate or that it deprived petitioner of fundamental fairness. The fact that his examination was brief is not enough. In short, the defendant has failed to show that additional examinations would have buttressed his defense.

 Though the errors discussed above do not, by themselves, require an issuance of the writ, we are required to examine whether they cumulatively operate to deprive the defendant of fundamental fairness. Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair. *United States v. Jones,* 482 F.2d 747 (D.C.Cir.1973); *Newsom v. United States,* 311 F.2d 74 (5th Cir.1962). *United States v. Maroney,* 373 F.2d 908 (3rd Cir.1967).

 The defendant contends that the combination of errors deprived him of his only defense, that of insanity. While it may be true that he has been deprived of that defense, we see no error in that circumstance. He appears to have been so deprived because he simply does not suffer from any condition that can be characterized as legal insanity. We therefore find no deprivation of due process or fundamental unfairness.

Because we conclude that there was no error in the district court's determination that it had the power to reach the merits of petitioner's claims and that the claims are without merit, we hereby AFFIRM the denial of the writ of habeas corpus.

---

somehow whether or not Tennessee law requires an examination is relevant to the constitutional issue. Whether or not Tennessee law provides for experts, they may be required to supply them when to fail to do so will deprive the defendant of a fair trial or effective assistance of counsel. The Fifth Circuit addressed a similar contention made by Texas in *Greer v. Beto,* 379 F.2d 923 (5th Cir.1967) with the remark that the "Texas policy may not, however, avoid the federal constitutional right to the effective assistance of counsel."

**5.** Specifically, we do not now decide the issue as to whether a defendant may ever be entitled to

an expert of his own choosing. The state appellate court and the state here in oral argument were of the view that the defendant's request was one for a private examination at state expense. They contend that there is no right to such private services. Since here the defendant has not requested a private psychiatrist, rather an examination at a specific institution *or its equivalent* (which might be public), we have no occasion to decide whether we follow the Circuits that have held there is no right to a private expert at state expense. *E.g. Satterfield v. Zahradnick,* 572 F.2d 443 (4th Cir.1978), *cert. denied,* 436 U.S. 920, 98 S.Ct. 2270, 56 L.Ed.2d 762 (1978).