810 F.2d 203
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eugene TAYLOR, Petitioner-Appellant,
v.
John REES and David Armstrong, Attorney General of
Commonwealth of Kentucky, Respondents-Appellees.
 No. 85-5916.
 United States Court of Appeals, Sixth Circuit.
 Nov. 12, 1986.
 
 Before ENGEL, JONES and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner, appearing pro se, appeals from the district court's dismissal of his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 (1982). Petitioner challenges his conviction on three grounds: (1) that the trial court erred by refusing to allow defendant to cross-examine a prosecution witness on his prior treatment for alcoholism; (2) that the trial court erred by allowing a prosecution eyewitness to testify that he selected defendant's photo from a "photo pack;" and (3) that the trial court erred by allowing a prosecution witness to testify that he had been assaulted and threatened. There is some dispute whether the second issue is properly before this court. After consideration of this matter on the written submissions of the parties, we find no constitutional error in the state court proceeding and therefore affirm the judgment of the district court.
 
 
 2
 The factual background of this case is as follows. The home of Edward and Julia Schleff was burglarized on February 22, 1982. Shortly after 5:00 p.m. that evening, Mr. Schleff ascended the steps from his basement and encountered a stranger walking from the bedroom. When the man was unable to explain satisfactorily his presence, Mr. Schleff told him to remain there while he got his shotgun and called the police. Mr. Schleff left the room and the suspect fled the house. Mr. Schleff ran out the front door and asked his wife, who was standing in the driveway, if she had seen a stranger leave the house. She replied that she had not but then stated that she saw such a man two houses down the street. At that point, the man "took off."
 
 
 3
 Mr. Schleff pursued the suspect on foot and saw him get into a car. He made a mental note of the license plate number and returned to his house to call the police. The police arrived soon thereafter, whereupon Mr. Schleff gave them the license number (possibly a partial number with one numeral or letter missing) and described the intruder as a black man, 35 to 40 years old, of slight build, and missing all or many of his bottom teeth. The only property that was missing was Mrs. Schleff's wallet. Using the information provided, the police came up with a car that belonged to the petitioner. Mr. Schleff subsequently identified the petitioner from an array of five photographs. Petitioner was arrested later that evening.
 
 
 4
 The following day, James Baskerville found Mrs. Schleff's wallet in a dumpster and turned it over to the police. At that point, Baskerville had never met the petitioner. The first time that he saw petitioner was at a preliminary state court proceeding. Following that proceeding, Baskerville was approached by an individual who told him not to show up for court. Minutes later, he was assaulted by two men. Subsequently, Baskerville identified petitioner as the driver of the car in which his assailants were riding.
 
 
 5
 At trial, Mr. Schleff testified as to his initial photo identification of the petitioner. In the presence of the jury, Mr. Schleff described the photo array as "probably a half a dozen photographs of different people, front and side views.". (Emphasis added). Mr. Schleff then pointed to the petitioner as the man who was in his house and whose photo he selected. Petitioner's trial attorney did not object to this testimony at the time, but waited until after Mr. Schleff finished his testimony, some 15 minutes later, and moved for a mistrial.
 
 
 6
 Later in the trial, when Baskerville testified in the presence of the jury about being assaulted, he stated that he was "pretty sure that Mr. Taylor was driving the car." On redirect examination, he stated that he had previously told the police that he was "sure" that petitioner was the driver. On cross-examination of Baskerville, petitioner's counsel attempted to establish that Baskerville had been drinking on the evening of the assault and that he had a history of alcoholism, had been arrested for intoxication several times, and had checked himself into a detoxification center some two years prior to the incident. The trial court allowed the former line of questioning--going to his sobriety at the the time of the assault--but rejected the latter.
 
 
 7
 Petitioner was indicted and convicted in a bifurcated jury trial of Burglary in the Second Degree and being a Persistent Felony Offender in the First Degree. He received a five-year sentence on the first count, which was enhanced to twenty years under the second count. The conviction was affirmed by the Kentucky Supreme Court. That court rejected, on the merits, the three issues raised in this proceeding. The federal district court again reviewed these three issues for constitutional error and dismissed the habeas corpus petition. This appeal follows.
 
 
 8
 Federal court review under the habeas corpus statute is limited to claims which allege a fundamental state court defect which "inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962). "Errors of application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus actions." Matlock v. Rose, 731 F.2d 1236, 1242 (6th Cir.1984), cert. denied, 105 S.Ct. 1747 (1985). However, erroneous evidentiary rulings which result in a denial of fundamental fairness will support habeas relief. Walker v. Engle, 703 F.2d 959, 962 (6th Cir.), cert. denied, 464 U.S. 962 (1983).
 
 
 9
 This court may review de novo the district court's conclusions of law and factual findings based soley on documentary evidence. Johnson v. Mabry, 602 F.2d 167 (8th Cir.1979). However, the state court's findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1982). Sumner v. Mata, 449 U.S. 539 (1981); Martin v. Foltz, 773 F.2d 711, 716 (6th Cir.1985), cert. denied, 106 S.Ct. 3336 (1986).
 
 I.
 
 10
 In his pro se brief, petitioner makes a very confused argument about the prejudicial effect of the trial court's refusal to allow cross-examination on the issue of Baskerville's past status as an alcoholic. At one point, petitioner concedes that the cross-examination was an attempt to impeach the credibility of the witness' testimony regarding the alleged assault. At other points, he asserts that the ruling frustrated his attempts to "expose the motive, bias or interest of the witness for testifying." While we understand the credibility argument, we fail to see how this line of cross-examination would or could establish the latter. Moreover, petitioner does not explain how he intended to establish an improper motive, bias or interest through these questions. We conclude that the only legitimate purpose of the proffered line of questioning would be to impeach the witness' credibility.
 
 
 11
 The point that the petitioner needed to and was trying to make was that Baskerville's identification of the petitioner as the driver of the vehicle from which the assailants alighted was suspect because Baskerville had been drinking. Toward this end, counsel was allowed to ask the witness whether he had been drinking that day, and, if so, how much. Petitioner's counsel wanted to further his cross-examination with questions about past "arrests" for public drunkenness and a stay at a detoxification facility more than two years prior to the assault. After taking this testimony out of the presence of the jury, the court ruled that there was not "any foundation for questioning [Baskerville] on the subject of being an alcoholic, not without more than we've got here."
 
 
 12
 The question whether this was a proper evidentiary ruling under Kentucky law is not before this court. See Matlock v. Rose, 731 F.2d at 1242. The issue that this court is concerned with is whether the inability to pursue this particular line of cross-examination, under the circumstances, deprived the petitioner of his right to confront his accusers or otherwise rendered the proceeding fundamentally unfair. We think it clear that it did not. Petitioner made his point when the witness admitted that he had been drinking on the day in question.
 
 II.
 
 13
 As mentioned above, there is a preliminary dispute over whether the issue of Mr. Schleff's testimony concerning his identification of petitioner from the photo pack is properly before the court. Petitioner appears to concede in his pro se brief that he did not properly preserve this matter, probably due to his counsel's delayed objection and motion for mistrial. Appellee seizes upon this admission. Nevertheless, we are reluctant to conclude that this issue has been waived for a number of reasons.
 
 
 14
 Initially, any state procedural defect will not bar this court's review of the issue because the Kentucky Supreme Court addressed this issue on the merits in its opinion affirming the conviction. See Walker v. Engle, 703 F.2d at 966. The issue was also considered and rejected on the merits by the district court. Finally, since petitioner is proceeding pro se, it simply would not serve the interests of justice to hold him to erroneous admissions of law.
 
 
 15
 Turning to the merits of this issue, petitioner claims that Mr. Schleff's testimony that he identified petitioner from a half-dozen photographs, "front and side views," prejudiced the jury by allowing them to draw a number of inferences. Petitioner argues that the "front and side view" description of the pictures allowed the jury to infer that Schleff was looking at "mug shots." From there, the jury could conclude that petitioner had a prior arrest record. This, petitioner argues, was prejudicial evidence of prior arrests and an unconstitutional attack on his character warranting the vacation of his conviction.
 
 
 16
 This circuit has recognized that the introduction of mug shots into evidence "has been strongly condemned in federal trials, as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality." Eberhardt v. Bordenkircher, 605 F.2d 275, 280 (6th Cir.1979) (citing cases); see also Murray v. Superintendent, Kentucky State Penitentiary, 651 F.2d 451, 454 (6th Cir.1981). In Eberhardt, a habeas case, the court regarded the introduction of mug shots at a trial in which the defendant chose not to take the stand as contributing to the fundamental unfairness of the state trial. In the instant case, however, mug shots were not introduced into evidence or otherwise shown to the jury. There was simply a testimonial reference to a photographic array of "probably half a dozen photographs of different people, front and side views," in the witness' description of his pretrial identification of the petitioner. Several circuits have held that "it is well settled that testimonial reference to a pretrial photographic identification [as opposed to actual introduction of mug shots], elicited to buttress an in-court identification, is a 'proper and strategically sound tactic.' " United States v. Fosher, 568 F.2d 207, 210 n. 9 (1st Cir.1978) (quoting United States v. Hines, 470 F.2d 225, 228 (3d Cir.1972), cert. denied, 410 U.S. 968 (1973), and United States v. Clemons, 445 F.2d 711, 713 (D.C.Cir.), cert. denied, 404 U.S. 956 (1971)).
 
 
 17
 The only question here is whether the witness' description of the pictures in the photopack rendered his reference the equivalent of actual introduction of the mug shot. One view was expressed in Judge Leventhal's opinion in Barnes v. United States, 365 F.2d 509 (D.C.Cir.1966):
 
 
 18
 The double-shot picture, with front and profile shots alongside each other, is so familiar, from "wanted" posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic.
 
 
 19
 Id. at 510-11. The competing view was more recently expressed by the Second Circuit in United States v. Oliver, 626 F.2d 254, 263 (2d Cir.1980): "[T]he mere fact that a photo might look to some like a 'mug shot' does not automatically imply the existence of a prior criminal record as long as prejudicial data [i.e., prison identification numbers and writing on back] is carefully removed." Of course, both Barnes and Oliver involved actual introduction into evidence of the mug shots, not mere testimonial reference to a photographic identification. In the instant case, there was no mention whatsoever of the term "mug shot" and no incriminating data on the photos was described by the witness.
 
 
 20
 In our opinion, this issue is ultimately reduced to a question of mixed law and fact whether the specific but brief testimony of Mr. Schleff was the functional equivalent of the introduction of the mug shots themselves. The factual question was implicitly answered by the Kentucky Supreme Court when it rejected the petitioner's legal assignment of error under state law, stating: "We consider the testimony permissible and are of the opinion 'other crimes' testimony is not present here in any respect." To the extent that this is an affirmance of the state trial court's finding of fact, it is entitled to a presumption of correctness. 28 U.S.C. § 2254(d) (1982). On the legal issue, we are in agreement with the state supreme court and the federal district court. Petitioner's argument that the jury prejudically inferred conduct (guilt) in conformity with "prior crimes or arrests" simply from witness Schleff's innocuous description of the photo pack requires too great a logical leap. Such inferential reasoning to a constitutional infringement is not justified under the circumstances of the case at bar.
 
 III.
 
 21
 The final issue is whether the petitioner was denied a fundamentally fair trial because Baskerville was allowed to testify that he had been assaulted and warned not to show up for court by two men riding in a car driven by the petitioner. The Kentucky evidentiary rule is that evidence that a witness has been threatened or intimidated in an attempt to suppress testimony is admissible only where it is shown that the acts were undertaken by or on behalf of the accused. Campbell v. Commonwealth, 564 S.W.2d 528, 531 (Ky.1978). Petitioner argues that the admission of Baskerville's testimony in this case was erroneous under state law because the witness wavered in his identification of petitioner as the driver.
 
 
 22
 First, if the witness did waver, it was between being "pretty sure" and "sure" that petitioner drove the vehicle from which the assailants alighted, and there were no other indicia of misidentification. Secondly, petitioner does not sufficiently explain how the admission of this testimony amounts to a violation of federal constitutional rights, as opposed to an erroneous state evidentiary ruling. See Matlock v. Rose, 731 F.2d at 1242. It appears to be the federal rule that evidence of conduct designed to impede a witness from testifying truthfully may be considered indicative of consciousness of guilt and should be put before the jury if it is more probative than prejudicial. See United States v. Bein, 728 F.2d 107, 114-15 (2d Cir.), cert. denied, 105 S.Ct. 135 (1984); United States v. Rosa, 705 F.2d 1375, 1377-78 (1st Cir.1983); United States v. Brashier, 548 F.2d 1315, 1325 (9th Cir.1976), cert. denied, 429 U.S. 1111 (1977). In the instant case, the testimony was very probative and any prejudice was lessened by the witness' admission on cross-examination that he had been drinking on the day of the assault. In short, we do not think that Baskerville's testimony regarding the assault infringed any of petitioner's federal constitutional rights.
 
 IV.
 
 23
 Because we conclude that petitioner's three assignments of constitutional error are without merit, the district court's dismissal of the habeas corpus petition is AFFIRMED.