904 F.2d 706
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald C. CROCKETT, Petitioner-Appellant,
v.
Donnie NOLES, Warden, Respondent-Appellee.
 No. 89-5924.
 United States Court of Appeals, Sixth Circuit.
 June 12, 1990.
 
 On Appeal from the United States District Court for the Middle District of Tennessee, 89-00267, Neese, D.J.
 M.D.Tenn.
 AFFIRMED.
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and CHARLES W. JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Donald Carr Crockett, a Tennessee state prisoner, appeals the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. Upon consideration of Crockett's substantive claims under Granberry v. Greer, 481 U.S. 129 (1987), we find that Crockett was not incarcerated in the state correctional institution in violation of his constitutional rights, and affirm the denial of his petition for relief.
 
 
 2
 * On April 14, 1986, Crockett was indicted on three counts of armed robbery of the Nashville City Bank and Trust Company, in violation of Tenn.Code Ann. Sec. 39-2-502; two counts of assault with the intent to commit murder, in violation of Tenn.Code Ann. Sec. 39-2-103; and two counts of the use of a firearm during the commission of a felony, in violation of Tenn.Code Ann. Sec. 39-6-1710. One of the counts of use of a firearm during the commission of a felony was later dismissed. On June 13, 1986, a further single-count indictment charged Crockett with the robbery of the Bellevue, Tennessee branch of the Commerce Union Bank, in violation of Tenn.Code Ann. Sec. 39-2-502.
 
 
 3
 On June 23, 1986, Crockett filed a motion in the state trial court for a psychiatric evaluation and a motion for production of medical and psychiatric records, both of which the state court granted. Pursuant to the court's order, Crockett was evaluated by a clinical psychologist at the Dede Wallace Mental Health Center. The clinical psychologist, Dr. Leonard Morgan, Jr., concluded that Crockett was "capable of defending himself in a court of law" and that "a defense of insanity cannot be supported at this time" (emphasis in original). Because Crockett was not evaluated by a psychiatrist, counsel for Crockett filed a motion on September 22, 1986 for a psychiatric evaluation. The court granted the motion.
 
 
 4
 Dissatisfied with the choice of institution at which the court ordered him to be evaluated, Crockett refused to report to that institution and filed another motion on October 14, 1986 for an "independent psychiatric evaluation" at a facility that was not "biased against him." The court responded by ordering Crockett to be hospitalized for 30 days at the Middle Tennessee Mental Health Institute so that it could be determined whether he was competent to stand trial and whether he had a defense of insanity. One of the Institute's clinical psychologists, Dr. Sam Craddock, concluded that Crockett did not suffer from a mental illness; rather, he probably had a personality disorder. Dr. Craddock testified that he found that Crockett was a malingerer--that "he was putting on an act when he thought he needed to"--and was not incompetent to stand trial. This assessment was confirmed by the Institute's psychiatrist, Dr. Willis Marshall.
 
 
 5
 On January 16, 1987, Crockett's counsel filed another motion for an independent psychiatric evaluation and a motion to withdraw as counsel. At a January 23 hearing on the motions, Crockett presented evidence of a November 8, 1979 letter by a consulting psychiatrist at the DeBerry Correctional Institute, Dr. Jan A. Mayer, who diagnosed Crockett "as having a chronic psychiatric illness which is controllable with anti-psychotic medication.... [I]t is highly probable that he was psychotic at the time he committed his offense."[1] Records also indicated that Crockett had suffered an unfortunate childhood; he was a victim of sexual abuse, and at age ten he jumped out of a church window in an apparent suicide attempt.
 
 
 6
 The diagnoses of Dr. Morgan, Dr. Craddock, and Dr. Marshall adequately considered this mental history, and the court overruled Crockett's January 16 motion for another psychiatric evaluation. The court also overruled the motion to withdraw as counsel. On January 30, 1987, Crockett pleaded guilty, pursuant to a plea agreement, to one count of bank robbery while employing a firearm under the April 14 indictment and one count of bank robbery under the June 13 indictment. On March 12, 1987, at the beginning of the sentencing hearing, Crockett filed a pro se motion to withdraw his guilty plea. His attorney was unaware that he intended to withdraw the plea. Crockett argued that he had been prejudiced by the court's earlier denial of his counsel's motion to withdraw and that he had been intimidated into entering the plea by his court-appointed counsel. He claimed that the only reason he wanted to plead was because he was afraid of going to trial without effective assistance from his lawyer, whom he did not trust.
 
 
 7
 The court considered the facts that a psychologist, a psychiatrist, and Crockett's attorney deemed Crockett to be competent to plead, and it denied the pro se motion. The court then sentenced Crockett to a 55-year term of imprisonment, 25 years on each of the bank robbery counts and a 5-year enhancement for the use of a firearm, to be served consecutively. Crockett filed a timely appeal.
 
 
 8
 New counsel was appointed to represent Crockett in the Tennessee Court of Criminal Appeals. According to Crockett's current attorney, Crockett's state appellate counsel filed a brief raising two issues: that the trial court erred by imposing consecutive sentences and that Crockett was not competent to enter a guilty plea. Crockett then filed a pro se "supplemental brief," raising twelve largely meritless issues. The state moved the court to strike the pro se brief on the ground that Crockett could not file his own brief while simultaneously being represented by counsel. The court of appeals granted the motion to strike. The court then affirmed the conviction. Crockett filed an application for permission to appeal to the Tennessee Supreme Court, and the application was denied.
 
 
 9
 On March 24, 1989, Crockett filed his pro se petition for writ of habeas corpus in federal district court. The district court found that ten out of his twelve claims failed to allege a violation of the United States Constitution but ordered the state to answer the remaining two claims. The two colorable claims were that Crockett did not enter his guilty plea knowingly and voluntarily and that he was denied his right to effective assistance of counsel. The state filed an answer, and the court denied Crockett relief. The district court found that the medical reports indicated that Crockett was indeed competent to stand trial and that Crockett was malingering in the state courts.
 
 II
 
 10
 * The crux of Crockett's habeas corpus argument is that his incarceration is illegal because he was denied the assistance of a psychiatrist in conducting his defense. The Supreme Court has held that a state must assure a defendant access to a competent psychiatrist when his sanity at the time of the offense is seriously in question. Ake v. Oklahoma, 470 U.S. 68 (1985).[2]
 
 
 11
 Crockett argues that the state court denied him his constitutional rights by not granting his January 16, 1987 motion for an independent psychiatric evaluation. Crockett claims that no doctor who testified in court objectively analyzed his mental condition. The expert witnesses at the hearing testified for the benefit of the court or the prosecution, but not for Crockett's benefit. Without being provided an independent psychiatrist of his own, Crockett claims that he had no way of contradicting or effectively cross-examining the prosecution's experts.
 
 
 12
 Crockett further asserts that an effective psychiatric defense requires more than the availability of a psychiatrist to testify in the defendant's behalf at trial. The psychiatrist is needed to prepare the defense and to help counsel determine how best to present evidence of the defendant's mental status at trial. Crockett argues that the denial of an independent expert both prevented Crockett from developing an adequate insanity defense and led trial counsel to encourage Crockett to plead guilty.[3]
 
 B
 
 13
 The district court ruled that Crockett's ineffective assistance of counsel claim was barred by procedural default in the state courts, since Crockett made his claim in a pro se brief that was filed after Crockett's counsel had already filed briefs on his client's behalf. On September 22, 1989, a panel of this court entered an order appointing counsel to represent Crockett in this appeal, stating that "the doctrine of procedural bar is not applicable to this appeal which instead should be reviewed in light of the exhaustion requirement contained in 28 U.S.C. Sec. 2254(b)." The state now argues that even if the district court denied relief on an inappropriate ground, the denial of relief was proper because Crockett failed to exhaust available state remedies. In fact, the state asserts that the procedural default in the state courts constitutes a failure to exhaust state remedies.
 
 
 14
 The state claims that under Anderson v. Harless, 459 U.S. 4, 6 (1982), a petitioner must have "fairly presented" the substance of his federal habeas corpus claim to the state courts in order to meet the exhaustion requirement. It argues that in this case, Crockett did not "fairly present" the substance of his claim since he did not follow the proper procedures for obtaining review of his claim. His claim was first presented to the state appellate court by way of a pro se supplemental brief, which that court refused to consider. The state asserts that a pro se supplemental brief was not the procedurally proper vehicle for securing review of his claim.
 
 
 15
 The district court noted that Crockett may still obtain review of his ineffective assistance of counsel claim in the state courts. Tennessee's Post-Conviction Procedure Act, Tenn.Code Ann. Sec. 40-30-101 et seq., is available as a means for receiving further review in state court. That statute requires a prisoner to petition for post-conviction relief "within three (3) years of the date of the final action of the highest state appellate court to which an appeal is taken." Tenn.Code Ann. Sec. 40-30-102. Since the last action taken by a state court occurred on May 31, 1988, when the Tennessee Supreme Court denied Crockett's application for permission to appeal, Crockett still has over a year to petition "the clerk of the court where the conviction occurred" for post-conviction relief. Tenn.Code Ann. Sec. 40-30-103. Crockett has not yet made such a petition. The state insists that he is therefore precluded from obtaining a review of the merits of his petition in federal court. See Boggs v. Evitts, 818 F.2d 534, 536 (6th Cir.1987).
 
 
 16
 In the district court, the state did not argue that Crockett had not exhausted his state remedies. It argued only that Crockett had procedurally defaulted on his ineffective assistance of counsel claim. In Granberry v. Greer, 481 U.S. 129 (1987), the Supreme Court held that where a state fails to raise a nonexhaustion defense in the district court, the court of appeals should exercise discretion to determine whether the administration of justice would be better served by addressing the merits of the habeas corpus petition or by remanding for further state or district court proceedings. Although there is a strong presumption in favor of requiring the prisoner to exhaust his state remedies, his failure to do so is not an absolute bar to appellate consideration of the substantive claims. Id. at 131; Rose v. Lundy, 455 U.S. 509, 515-20 (1982). The Court admonished that "if the court of appeals is convinced that the petition has no merit, a belated application of the exhaustion rule might simply require useless litigation in the state courts." Granberry, 481 U.S. at 133.
 
 
 17
 The state submits that the interests of justice require that we force Crockett to exhaust his state remedies before ruling on his petition. The state claims that "in this case unresolved questions of fact regarding the appellant's claim of ineffective assistance of counsel has [sic] an important bearing on resolution of the issue in any subsequent federal habeas corpus proceeding." The state argues that a dismissal of the petition for failure to exhaust state remedies would ensure that all of the facts surrounding Crockett's claim are considered by the appropriate court.
 
 
 18
 Contrary to the state's suggestion, this case does not present "an issue on which an unresolved question of fact or of state law might have an important bearing...." Id. at 134-35. No material facts regarding the sufficiency of Crockett's legal assistance are in question. Because "a belated application of the exhaustion rule might simply require useless litigation in the state courts," id. at 133, we shall proceed to address the merits of the habeas petition.
 
 III
 
 19
 Due process requires that a court entertain a guilty plea or permit a prosecution to proceed only when the accused is mentally competent. See Pate v. Robinson, 383 U.S. 375 (1966); Dusky v. United States, 362 U.S. 402 (1960). Under Tennessee law, the burden is on the habeas petitioner to prove that he was incompetent when he submitted his guilty plea. See Matlock v. Rose, 731 F.2d 1236, 1241 (6th Cir.1984), cert. denied, 470 U.S. 1050 (1985). The issue of competency is a mixed question of law and fact, subject to de novo review. See Drope v. Missouri, 420 U.S. 162, 174-75 (1975).
 
 
 20
 After considering the merits of Crockett's petition, we conclude that the record reveals that Crockett did not prove that he was incompetent to plead guilty. At the January 23, 1987 hearing on Crockett's motion for an additional independent psychiatric evaluation, several witnesses testified that Crockett was competent to stand trial and could not reasonably raise an insanity defense.
 
 
 21
 Dr. Craddock testified that, in 1979, Dr. Mayer had diagnosed Crockett initially as psychotic, but in the discharge summary "no psychosis was noted" and Crockett was instead "considered to be sociopathic." All future evaluations of Crockett indicated that he understood right from wrong and was legally competent. Dr. Morgan testified that Crockett was trying to make the evaluation team believe that he was mentally ill, but that Crockett was malingering--that Crockett "was probably trying to make us think he was mentally ill." After a 30-day evaluation at the Middle Tennessee Mental Health Institute, the doctors diagnosed Crockett as having a personality disorder, but not a disorder that rose to the level of a mental illness. One psychiatrist there found that Crockett was "highly competent to stand trial."
 
 
 22
 The district court found that these evaluations constituted "absolute compliance with due process in this case." The court also specifically found that the Middle Tennessee Mental Health Institute was an "independent agency, not answerable in any way to law enforcement officials or prosecutors of this State."
 
 
 23
 At the guilty plea hearing, the court questioned Crockett at length about his willingness to enter into a plea agreement:
 
 
 24
 Q. Okay. Now, Mr. Crockett, are you feeling all right today?
 
 
 25
 A. Yes, sir.
 
 
 26
 Q. Are you taking any medication at all?
 
 
 27
 A. No, sir.
 
 
 28
 Q. Do you feel at all confused or nervous about being here in court?
 
 
 29
 A. A little bit.
 
 
 30
 Q. Well, anything out of the ordinary?
 
 
 31
 A. No, sir.
 
 
 32
 Q. Do you feel that you're thinking clearly?
 
 
 33
 A. Yes, sir.
 
 
 34
 Q. Have you had an [sic] hallucinations or any other disturbance in the last couple of days?
 
 
 35
 A. No, sir.
 
 
 36
 The court also asked Crockett's trial counsel whether he believed that the guilty plea was an intelligent decision by Crockett. Counsel responded that Crockett had made his decision in a rational way and that he was confident Crockett was competent to enter the plea.
 
 
 37
 The district court exhibited careful sensitivity to the issue of Crockett's competency. The record contains no evidence that Crockett was incompetent to stand trial. The plea was voluntarily and knowingly made. The last psychiatric evaluation Crockett received was independent, and there is no reason to believe that another evaluation would have resulted in a different diagnosis. Crockett is not entitled to another evaluation, since his due process rights certainly had been satisfied at the time of his plea. The evidence strongly indicates that Crockett did not cross the threshold requiring more due process than he in fact received, since his sanity was not seriously in question. See Ake, 470 U.S. at 83. Despite Crockett's counsel's creative proposal for further psychiatric assistance in the preparation of the defense, Crockett was not constitutionally deserving of more due process than he received. Crockett's claims also fail to implicate any recognized sixth amendment right. There is no constitutional ground for overturning the conviction based on Crockett's guilty plea.
 
 
 38
 The order denying relief is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The "offense" that Dr. Mayer refers to was a 1978 offense that is not at issue in this case
 
 
 [2]
 Because the Court in Ake found that the denial of the assistance of a psychiatrist deprived the defendant of due process, it declined to consider the applicability of the sixth amendment in this context. Crockett is pursuing both fourteenth and sixth amendment arguments
 
 
 [3]
 Counsel for Crockett also raises twelve "non-argued issues," which he declines to address in depth, but which he mentions in order to comply with Anders v. California, 386 U.S. 738 (1967). These issues are raised in Crockett's pro se brief. They either do not raise colorable constitutional claims or raise claims unrelated to the plea under attack. Most are not supported by the record; all are meritless. We decline to grant relief on the basis of these claims