856 F.2d 192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert AMBROSE, Petitioner-Appellee,
v.
Michael DUTTON, Warden, Respondent,
Michael Cody, Attorney General, Respondent-Appellant.
 No. 87-6075.
 United States Court of Appeals, Sixth Circuit.
 Aug. 25, 1988.
 
 Before LIVELY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Respondent Michael Dutton, Warden of the Tennessee State Penitentiary, (respondent) appeals from the judgment of the district court granting petitioner Robert Ambrose's petition for a writ of habeas corpus in this action brought under 28 U.S.C. Sec. 2254. For the following reasons, we affirm the judgment of the district court.
 
 I[1]
 
 2
 On October 1, 1981, petitioner was convicted in the Davidson County Criminal Court of armed robbery. The jury assessed punishment at life imprisonment. His conviction was affirmed by the Tennessee Court of Criminal Appeals on August 11, 1982.
 
 
 3
 On June 30, 1983, petitioner filed a petition for post-conviction relief in the state trial court. The state trial court dismissed his petition, following an evidentiary hearing. On October 3, 1984, the Tennessee Court of Criminal Appeals affirmed the judgment of the trial court dismissing the petition for post-conviction relief. The Tennessee Supreme Court subsequently denied petitioner's application for permission to appeal on January 28, 1985.
 
 
 4
 On April 23, 1985, petitioner filed the instant petition for habeas corpus relief. He contends that he was denied his sixth amendment right to effective assistance of counsel by his counsel's failure to investigate the crime, to adequately confer with petitioner in preparation for trial, and to explore a psychiatric defense by obtaining a psychiatric examination. The petition was referred to a magistrate who recommended that the petition be dismissed without prejudice to allow the state courts to consider proffered expert psychiatric testimony. On June 1, 1987, an evidentiary hearing was held. On August 18, 1987, the district court granted the petition and ordered that the writ "shall issue within ninety (90) days unless respondent appeals this order or, within that time, the State on its own motion vacates petitioner's conviction and grants him a new trial."
 
 
 5
 At the state court hearing, petitioner presented the testimony of Rebecca Hogan, a friend whose sister was married to petitioner's brother, Charles Ambrose, his brother, Edward White, his attorney at the trial level, and himself. On the issue of ineffective assistence of counsel[2] the state called only Seth Norman, the attorney who represented petitioner's co-defendant.
 
 
 6
 Rebecca Hogan testified that petitioner's pregnant wife and his step-son had been killed in a fire in Murfreesboro, Tennessee. Since this tragedy, all petitioner could talk about was the fire. After the fire, petitioner started drinking; he would get drunk and dwell on the tragedy.
 
 
 7
 Charles Ambrose testified that after the fire, petitioner started drinking, taking pills, and "went crazy."
 
 
 8
 The petitioner testified that prior to making bond on the charge of armed robbery, he had been held in jail for a period of eleven and a half (11 1/2) months. During this time, his attorney, Edward White, talked with him once or twice for about ten to fifteen minutes. The appellee made bond five (5) months prior to trial and, during this time, he went to White's office twice where the case was discussed for ten to fifteen minutes. White refused to discuss the case with petitioner on the telephone.
 
 
 9
 Prior to trial, petitioner stated that he had had nightmares about his wife's death and that he had asked White to get him a psychiatrist. White did not do so and the appellee did not receive a psychiatric examination prior to trial.
 
 
 10
 Finally, he testified about the fire which claimed the lives of his wife and step-son on March 14, 1977. He stated that after the fire he began drinking and developed a severe problem with alcohol.
 
 
 11
 Edward White testified that he probably visited petitioner twice while petitioner was incarcerated. White stated that he had engaged in pre-trial discovery by discussing the case with petitioner and counsel for his co-defendant. White discussed petitioner's testimony with him and had him prepared to testify. However, White did not interview the police officers or the victim. White went to the market where the robbery occurred, but he did not go inside the market.
 
 
 12
 White further testified that an attorney who had previously represented petitioner had filed a motion for a psychiatric examination. However, after discussions with petitioner, White determined that a psychiatric examination was not necessary or appropriate.
 
 
 13
 White additionally stated that in preparing for trial, he discussed the case with the co-defendant's attorney; he conducted a full interview with petitioner and he discussed the case with the assistant district attorney general who prosecuted the case. Although White did not personally interview the police officers prior to trial, he knew what they would testify to from discussions with the co-defendant's attorney and the assistant district attorney general.
 
 
 14
 On cross-examination, White testified that from his interviews with petitioner and from his own investigation, he determined that petitioner would probably be found guilty and was, in fact, guilty of the armed robbery. Therefore, White's primary strategy was to attempt to mitigate the jury's treatment of petitioner.
 
 
 15
 Seth Norman testified that during the course of his investigation he spoke with the victim and visited the crime scene. Norman stated that he and White discussed the case.
 
 
 16
 At the evidentiary hearing in the district court, petitioner presented the testimony of several friends and relatives and his former employer who testified about the effect the loss of his wife had on petitioner's life. The testimony duplicated in substance the testimony presented in the state courts on this issue.
 
 
 17
 The petitioner also testified at the hearing. He stated that prior to the fire which killed his wife and step-son, he did not abuse alcohol and he never used drugs. However, after the fire, all petitioner wanted to do was drink. Also after the fire, he occasionally used marijuana. On the night of the crime, petitioner drank beer and took some valium.
 
 
 18
 Petitioner stated that he told Edward White about the fire. However, he did not tell White that he was depressed; he simply told White that he wanted to see a psychiatrist before trial. Petitioner did not tell White why he wanted to see a psychiatrist prior to trial and also did not tell White about the changes in his behavior. However, on redirect examination, he stated that he advised White that he wanted a psychiatric examination to find out why he would have committed the armed robbery. Petitioner also advised White of his use of drugs and alcohol on the night of the robbery and advised White that he had no prior felony record.
 
 
 19
 Finally, petitioner stated that he saw White once or twice while he was in custody awaiting trial. Each interview lasted ten or fifteen minutes in length. After being released on bond, he saw White during one interview for about thirty minutes.
 
 
 20
 Petitioner also called Dr. William Kenner, a psychiatrist, as a witness.
 
 
 21
 Dr. Kenner testified that he evaluated petitioner on May 28, 1987, some three (3) days prior to the evidentiary hearing. Prior to evaluating him Dr. Kenner reviewed petitioner's records from the DeBerry Correctional Institute and was apprised of information gathered through interviews with his family members. At the time Dr. Kenner interviewed petitioner, he diagnosed him as suffering from a major depression of the pathological grief reaction type which was triggered by the death of petitioner's brother in a car accident in 1976 and the death of petitioner's wife and step-son in a fire in 1977. Following these events, his behavior changed and he began abusing alcohol and abusing drugs, particularly valium. Petitioner also lost fourteen pounds, had insomnia, had difficulty maintaining employment, had nightmares about his dead family members, and attempted suicide on two occasions. In Dr. Kenner's opinion, petitioner dealt with his grief in a self-destructive manner.
 
 
 22
 Dr. Kenner further testified that petitioner's reaction to the deaths of his family members was not unusual and was, in fact, to be expected. According to Dr. Kenner, it would not be unusual for an individual who had experienced these events to have a death wish or suicidal thoughts, or even to take suicidal actions.
 
 
 23
 Dr. Kenner stated that at the time he evaluated petitioner, petitioner did not meet the test for insanity set forth in Graham v. State, 547 S.W.2d 531, 543 (Tenn.1977), (adopting a slightly modified version of the American Law Institute's Model Penal Code insanity test). Dr. Kenner indicated that he did not believe that his diagnosis would have been different in 1980 (the date of the trial) or 1983 (the date of the state post-conviction hearing). Although Dr. Kenner stated that he did not believe that petitioner met the Graham test of insanity, he felt that that was "something that would be worthwhile to put to a jury." He also opined that the psychiatric evidence would have had a mitigating effect in terms of jury sentencing.
 
 
 24
 In granting the writ, the district court found that the petitioner had exhausted the state court remedies even though he had not presented the testimony of Dr. Kenner at the state court hearings, because Dr. Kenner's testimony went only to the prejudice prong of petitioner's ineffective assistance of counsel claim and the state courts had found that petitioner had not met the performance prong. The court also found that the state court's findings were not entitled to the presumption of correctness found at section 2254(d). Finally, the court found that petitioner was denied effective assistance of counsel.
 
 
 25
 Respondent raises three arguments on appeal. He argues that because new evidence was introduced at the evidentiary hearing held in the district court which was not considered at the state evidentiary hearing, i.e., the testimony of Dr. Kenner, the district court erred in determining that petitioner had satisfied the exhaustion requirement, that the district court erred in not applying the presumption of correctness to the state court's findings of fact, and that the district court erred in determining that petitioner was denied effective assistance of counsel.
 
 II.
 A.
 
 26
 Respondent's exhaustion argument stems from the fact that the district court heard the testimony of Dr. Kenner, which was not presented at the state evidentiary hearing. Respondent contends that because petitioner did not introduce the evidence presented by Dr. Kenner at the state hearing, he failed to exhaust his state court remedies. Petitioner counters by arguing that Dr. Kenner's testimony only went to the prejudice prong of his ineffective assistance of counsel claim, and that therefore the principles of exhaustion are not implicated.
 
 
 27
 The district court ruled that petitioner has presented the substance of his claim to the state court. The court noted that the testimony of Dr. Kenner was admitted only on the issue of prejudice.[3] The court concluded that "because the state courts (erroneously) found that Ambrose's counsel rendered assistance within a reasonable range of competence, the prejudice issue of Strickland v. Washington, even if raised by petitioner would not have been and would not now be addressed by the state courts. Returning to the state court, therefore, would be fruitless."[4]
 
 Section 2254(b) provides that
 
 28
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the States, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 
 
 29
 "The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." Vasquez v. Hillery, 474 U.S. 254, 257 (1986). "This is accomplished by giving the state courts an opportunity to pass upon and correct alleged violations of constitutional rights of state prisoners in the first instance." Butler v. Rose, 686 F.2d 1163, 1168 (6th Cir.1982). "It follows, of course, that once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." Picard v. Connor, 404 U.S. 270, 275 (1971). However, "[t]his court has consistently held that the explicit language of Sec. 2254(b) does not require the petitioner to pursue a state remedy that is clearly futile." Matlock v. Rose, 731 F.2d 1236, 1240 (6th Cir.1984), cert. denied, 470 U.S. 1050 (1985).
 
 
 30
 In Sampson v. Love, 782 F.2d 53 (6th Cir.), cert. denied, 107 S.Ct. 159 (1986), this court addressed the question "whether or when, new facts or evidence, not presented to the state courts, can affect a habeas petitioner's claim to such a degree that the new facts or evidence must first be presented to the state courts." Id. at 55.[5] In his habeas petition and in the state courts, Sampson had raised the issue of jury vindictiveness. In the district court, Sampson submitted the following documents which were not presented to the state courts:
 
 
 31
 (1) newspaper clippings from the Lewisburg Tribune and Marshall County Gazette regarding the crime and Sampson's trials; (2) 1980 Census of Population, vol. 1, ch. B, part 44 (Tennessee) (Aug. 1982); and (3) affidavits of two jurors from the second trial regarding the jurors' actual knowledge at the time of deliberation, of Sampson's sentence in the first trial.
 
 
 32
 Id. at 54. This court held that the evidence presented in conjunction with Sampson's federal habeas petition placed his claim in a significantly different posture and that the state court must be given an opportunity to consider the claim in that posture.
 
 
 33
 Respondent argues that the presentation of the testimony of Dr. Kenner which was relied on by the district court in determining that petitioner was prejudiced by his counsel's ineffectiveness, placed his claim in a significantly different and stronger evidentiary posture and, therefore, the petition should have been dismissed on exhaustion grounds.
 
 
 34
 It is undisputed that petitioner presented the essence of his ineffective assistance of counsel claim to the state courts, including his claim that his counsel was ineffective for failing to pursue the psychiatric defense.[6] The dispute centers on the effect of Dr. Kenner's testimony. It is also apparent from Judge Wiseman's opinion that he used Dr. Kenner's testimony in evaluating the prejudice prong of Strickland, and did not rely on it in determining that petitioner's counsel was ineffective. Finally, it is also apparent that the state court did not consider Strickland, but ruled that petitioner was not denied effective assistance of counsel on the basis of a rule which is the equivalent of the first prong of Srickland.[7]
 
 
 35
 The essence of petitioner's argument is that the introduction of this evidence could not have placed his claim in a significantly different posture, because it only went to a prong of the Strickland test not considered or reached by the state courts. The district court used a similar analysis in finding that a remand to the state courts would be fruitless.
 
 
 36
 While the respondent cites to many cases which found that the introduction of different evidence in the federal habeas proceeding resulted in exhaustion problems, none of his cases directly address the issue which confronts us. See Brown v. Estelle, 701 F.2d 494, 495 (5th Cir.1983) (affidavits of individuals who witnessed petitioner's bizarre behavior in prison added substantially to claims of mental illness which previously had no serious corroboration); Jones v. Hess, 681 F.2d 688, 693 (10th Cir.1982) (allegations and showing concerning ex parte communications between the state trial judge and the prosecution transformed claim of bias into a significantly different and more substantial claim); Domainque v. Butterworth, 641 F.2d 8, 13 (1st Cir.1981) (unarticulated factual allegations outside the record not presented to state courts); Knoxson v. Estelle, 574 F.2d 1339, 1340 (5th Cir.1978) (introduction of letters not before state court and new factual allegations in support of petitioner's claim); Gurule v. Turner, 461 F.2d 1083, 1084 (10th Cir.1972) (new legal theory and facts presented to district court); United States ex rel. Figueroa v. McMann, 411 F.2d 915, 916 (2d Cir.1969) (issues before habeas court differed markedly from those before state courts); United States ex rel. Boodie v. Herold, 349 F.2d 372, 373 (2d Cir.1965) (record of arraignment proceedings not before state court).
 
 
 37
 While the testimony of Dr. Kenner did present the events which led to petitioner's emotional problems in somewhat more detail and with accompanying clinical analysis, the testimony relating to petitioner's condition and its cause was substantially duplicative of the testimony given by the petitioner at his state court hearing.[8] The only "new" testimony related to Dr. Kenner's opinion as to the effect the introduction of this evidence would have had on the jury and whether he thought petitioner was legally insane at the time of trial. While this evidence admittedly enhances petitioner's showing of prejudice, it did not place his claim that his trial attorney's assistance was ineffective in a significantly different posture. Had the state courts ruled that petitioner's counsel was ineffective but that he was not prejudiced by the ineffectiveness, the introduction of Dr. Kenner's testimony would have to be viewed in a different light. However, since the state courts did not consider the prejudice prong,[9] we hold that the district court correctly found that petitioner had exhausted his state court remedies.
 
 
 38
 Alternatively, we also believe the district court properly decided that any further consideration by the district court would be futile. As noted earlier, this court has held that Sec. 2254(b) does not require petitioner to pursue claims in the state courts that are clearly futile. See Matlock, 731 F.2d at 1240. While the respondent spends much of its argument on this issue demonstrating that there is no procedural bar to petitioner's claim being reconsidered by the state courts, it misses the essence of the district court's ruling, which is that based on substantive law, reconsideration of petitioner's claim would be futile. The district court premised its ruling on the fact that Strickland expressly stated that courts need not address both components of its test if they find an insufficient showing on one. Strickland, 466 U.S. at 697. Since the state courts have already found that petitioner has not made a sufficient showing on the performance component of the test, and since the "new" evidence presented to the district court does not significantly alter petitioner's claim as to this component, we agree with the district court's analysis of the futility of reconsideration by the state courts.
 
 B.
 
 39
 The respondent also argues that the district court erred in not applying a presumption of correctness to the state court's findings regarding petitioner's claim.[10] "[A] habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.' " Sumner v. Mata, 449 U.S. 539, 551 (1981). "[I]n a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. Sec. 2254(d).... Rather ... it is a mixed question of law and fact. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of Sec. 2254(d), ... both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Strickland, 466 U.S. at 698.
 
 
 40
 In the instant case, the district court discounted the state court findings because "the factual findings of the state court are not supported by the evidence, that the material facts were not adequately developed, and that the factfinding procedure employed by the district court was not adequate to afford a full and fair hearing." Since the presumption of correctness can be rebutted if the petitioner proves any one or more of the conditions listed in section 2254(d), Bishop v. Rose, 701 F.2d 1150, 1155 (6th Cir.1983), the decision of the district court on this issue must be affirmed if any of its three conclusions is proper.[11]
 
 
 41
 In this case the state courts made the following findings:
 
 
 42
 1. Trial counsel for Petitioner prepared for the trial in this case by discussions with his client, and Assistant District Attorney prosecuting the case, and counsel for the co-defendant who was familiar with the victim and the crime scene in the case. There has been no showing of any particular evidence not discovered by or known to trial counsel for Petitioner which was material to the trial in the instant case.
 
 
 43
 2. Based upon the evidence presented, the Court finds that Petitioner was mentally competent at all relevant times.
 
 
 44
 3. The Court finds no evidence of any defense which was not put forth on behalf of Petitioner.
 
 
 45
 Trial Court's Order of August 27, 1987.
 
 
 46
 The petitioner contended that his counsel did not consult with him properly before trial, failed to interview witnesses or properly investigate the case and failed to have a psychiatric examination made. Ambrose's wife and step-child burned in a fire three years before and he contended that he had had a severe alcohol and drug problem after that time. He also testified that he was dissatisfied with his counsel after the jury was picked and told him that he needed another attorney.
 
 
 47
 The trial counsel testified as to his conduct in the case and refuted all of these claims of ineffective representation.
 
 
 48
 Counsel denied that Ambrose had ever expressed dissatisfaction with him at trial. After talking with Ambrose, counsel found that a psychiatric examination was not necessary or proper.
 
 
 49
 By the trial judge's findings, counsel more than measured up to the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn.1975). They are fully sustained.
 
 
 50
 Ambrose v. State, Tenn. Court of Criminal Appeals (Oct. 3, 1984).
 
 
 51
 We agree with the district court's determination that the state court's findings relative to the conduct of petitioner's attorney is not supported by the evidence, particularly, the appellate court's assertion that petitioner's trial counsel had refuted all the claims of ineffective assistance of counsel. The following passage, from the district court's findings of fact and conclusions of law sums up the evidence with undermines the state court's findings:
 
 
 52
 Attorney White testified that it was not true that he had only seen Mr. Ambrose twice at the jail. However, he was unable from independent recollection to state how many times he did visit with Mr. Ambrose and stated that his file did not contain any journal concerning his visits with petitioner. He further stated that if the records in the jail showed that he had only signed the docket book to visit Ambrose on two occasions then that would probably be true. He therefore conceded that it was likely he had seen Ambrose only on those two occasions as petitioner testified. He stated that he made an independent decision not to follow up on the psychiatric examination and denied having filed a motion with the court for the psychiatric examination. He further stated that he had no independent recollection or record of how long he had discussed the case with Ambrose prior to the trial. White testified that he did make pretrial discovery in the case. However, on further examination this statement was substantially impeached by references to the trial record in which the district attorney stated that White had failed to come by his office for open file discovery. Moreover, White admitted that he never interviewed any of the police officers or the victim in the case. Although he went by the store that was robbed he never entered the store and therefore was unaware of the location of the counter and cash register, information which played a dominant role during the trial. On several key questions, such as whether and to what extent he brought out the fact of the fire and the death of petitioner's wife and children, he stated he had no independent recollection. He also indicated that he had no independent recollection as to what particular advice he had given to Ambrose concerning his testimony. Further proof indicated that he did talk to the prosecutor and also got information from counsel for codefendant Seth Norman.
 
 C.
 
 53
 Finally, the respondent argues that the district court erred in determining that petitioner was denied effective assistance of counsel. The respondent relies on the following principles taken from Strickland.
 
 
 54
 Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
 
 
 55
 Strickland, 466 U.S. at 690. The respondent bases much of his argument concerning the performance prong discussing the fact that there was no evidence that petitioner's trial counsel was made aware of the extent of petitioner's mental problems and, therefore, his counsel was not deficient in failing to pursue a psychiatric evaluation. Although respondent's argument addresses one of the reasons behind the district court's finding that petitioner satisfied the performance prong, it does not address the other reasons which led the court to the conclusion that petitioner's trial counsel was ineffective due to his failure to properly prepare for trial. The district court found the following deficiencies in petitioner's trial counsel's conduct:
 
 
 56
 (1) That Attorney White met with petitioner on only four occasions prior to trial and that each meeting was of a ten to fifteen minute duration;
 
 
 57
 (2) That Attorney White filed a motion for a psychiatric evaluation in the state trial court and failed to follow up on that motion and failed to have a psychiatric evaluation conducted;
 
 
 58
 (3) that the occurrence of the fire in 1977 which caused the death of Ambrose's wife and stepchild obviously had a severe impact on Ambrose, that Ambrose had related this impact to Attorney White and that this created a situation which would strongly suggest to any competent attorney that a psychiatric evaluation was necessary in preparation for trial;
 
 
 59
 (4) That White failed to contact any defense witnesses or to interview any witnesses for the prosecution;
 
 
 60
 (5) That White's only investigation of the scene involved viewing the location of the robbery from outside the building and that items relevant and necessary to prepare effective cross-examination could only be viewed from inside the store;
 
 
 61
 (6) That White's only discovery involved a discussion with the prosecutor and information learned through counsel for Ambrose's co-defendant, whose defense was antagonistic to Ambrose's'
 
 
 62
 (7) That Attorney White determined that his best course of action was to attempt to show mitigating evidence to the jury, yet his best source of mitigation was in a psychiatric defense which could have been developed through family, friends and a psychiatric evaluation. White made no attempt to prepare to produce this type of evidence either by interviewing potential defense witnesses or by obtaining the psychiatric examination he initially requested.
 
 
 63
 While the respondent's argument does put into question the district court's finding relative to the psychiatric evaluation, it does not case much doubt on the other findings. We agree with the district court's conclusion that these findings indicate conduct by petitioner's trial counsel which was deficient under Strickland.
 
 
 64
 Alternatively, the respondent argues that petitioner failed to satisfy the prejudice prong of Strickland. In order to satisfy the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Respondent's argument is based on the fact that Dr. Kenner did not believe that petitioner met the Graham test for insanity which would preclude an acquital on insanity grounds, and that petitioner's co-defendant also received a life sentence from the jury which shows that a psychiatric evaluation and the introduction of evidence of petitioner's mental state at trial would not have mitigated the petitioner's punishment.
 
 
 65
 The district court citing to Dr. Kenner's testimony and the corroborating testimony of petitioner's family concluded that "an insanity defense could have been developed or been produced resulting possibly in an acquital by reason of insanity, or more probably in a penalty of less than life. These are probabilities sufficient to undermine the Court's confidence in the outcome of the state trial."
 
 
 66
 The fact that petitioner's co-defendant received the same penalty may be viewed as indicative that the outcome would not have been different. However, since there was no evidence that the co-defendant had any ameliorating defense, and since the egregiousness of the crime would have equally effected his co-defendant's sentence, this evidence does not persuade us that the outcome would not have been different. In the case of the petitioner, it is difficult to say that a jury presented with all the facts relative to petitioner's mental health would still have found him guilty or would still have sentenced him to life imprisonment. Accordingly, we agree with the district court's determination that petitioner was prejudiced by his counsel's deficient performance, and affirm his conclusion that petitioner was denied effective assistance of counsel.
 
 
 67
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Due to the nature of the issues involved in this case, the facts concerning the crime for which petitioner was convicted are not particularly relevant. Rather, the relevant facts pertain to petitioner's counsel's performance at trial, and the presentation of evidence at the state and habeas hearings
 
 
 [2]
 Petitioner also raised an issue of prosecutorial misconduct in the state courts. This issue was not raised in his habeas petition
 
 
 [3]
 The Tennessee court in ruling on petitioner's claim did not have the benefit of the guidance of Strickland v. Washington, 466 U.S. 668 (1984) when it conducted its evidentiary hearing, as the state hearing was held on July 22, 1983, and Strickland was decided on May 14, 1984, and as the district court noted, even though the state court decisions were issued after Strickland, neither decision made reference to the Strickland test
 
 
 [4]
 The Tennessee courts found that petitioner's counsel's performance measured up to the standards of Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn.1975). Baxter adopted the following standard: "whether the advice given, or the services rendered by the attorney, are within the range of competence demanded of attorneys in criminal cases."
 
 
 [5]
 In Vasquez, the Supreme Court noted that it had never held that "presentation of additional facts to the district court, pursuant to the court's directions, evades the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts." Vasquez, 474 U.S. at 257-58
 
 
 [6]
 The state court considered the filing of petitioner's motion for a psychiatric evaluation, which was not pursued by his trial counsel, and heard some of the evidence relating to the death of petitioner's wife and the effect it had on him
 
 
 [7]
 The standard set forth in Baxter, 523 S.W.2d at 936 is identical to the standard set forth in McMann v. Richardson, 397 U.S. 759, 771 (1970) and noted in Strickland, 466 U.S. at 687
 
 
 [8]
 At his state court hearing, petitioner testified about the fire, the loss of his family, and his subsequent problems, i.e., nightmares, alcohol and drug abuse, loss of weight
 
 
 [9]
 The fact that the state courts did not expressly reference Strickland in their opinions is of little import, since their finding that petitioner's counsel was not ineffective is equivalent to a finding that he had not met the first prong of Strickland 's disjunctive test
 
 
 [10]
 Section 2254(d) provides as follows:
 (d) In any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit--
 (1) that the merits of the factual dispute were not resolved in the State court hearing;
 (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
 (3) that the material facts were not adequately developed at the State court hearing;
 (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceedings;
 (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
 (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
 (7) that the applicant was otherwise denied due process of law in the State court proceeding;
 (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
 
 
 [11]
 Because we agree that the state court's findings are not supported by the evidence, we need not address the other grounds cited by the district court